SILBERSTEIN v PRO-GOLF OF AMERICA, INC

Docket No. 275195. Submitted February 12, 2008, at Detroit. Decided
April 1, 2008, at 9:10 a.m. Leave to appeal sought.

Ronald N. Silberstein brought an action in the Oakland Circuit
Court against Pro-Golf of America, Inc., and others, seeking
damages for wrongful discharge from employment in violation of
public policy, tortious interference with an advantageous business
relationship or expectancy, and conversion. Pro-Golf of America,
Inc., filed a counterclaim against the plaintiff, alleging breach of
contract, breach of fiduciary obligations, and fraud. The defen-
dants moved for summary disposition on all the counts and the
plaintiff moved for summary disposition of the counterclaim. The
court, Rae Lee Chabot, J., granted summary disposition in favor of
the plaintiff with regard to the claims of breach of contract and
breach of fiduciary obligations, but denied summary disposition
with regard to the fraud claim. The motion to dismiss the claim of
wrongful termination was denied in part and the motion to dismiss
the claim for conversion was granted. The court ruled that there
was sufficient evidence to show that the defendants' claim that the
plaintiff was terminated because of a work force reduction was a
pretext and the jury should consider the issue. The court also ruled
that, because the after-acquired-evidence doctrine serves to limit
damages, not to limit claims, the doctrine was not applicable with
regard to the motion for summary disposition, but it could be
considered in determining damages. The court's order provided
that summary disposition was granted in favor of the plaintiff
regarding the counterclaim concerning purported referral fees or
kickbacks. At trial, the court, Charles W. Simon, Jr., J., refused to
admit evidence of alleged kickbacks and the jury returned a verdict
for the plaintiff. The court entered a judgment for the plaintiff and
denied the defendants' subsequent motions for a new trial, judg-
ment notwithstanding the verdict, and remittitur. The defendants
appealed.

The Court of Appeals *held*:

1. The trial court properly instructed the jury that the plaintiff
had the burden to prove that "one of the reasons" for his discharge
was his refusal or failure to violate the law. He was not required to

prove that his refusal or failure to violate the law was "the" exclusive reason for his discharge.

2. The trial court did not err in denying the defendants' motion for a directed verdict. There was more than enough evidence presented to allow a reasonable juror to conclude that one of the reasons for the plaintiff's termination from employment was his refusal or failure to violate the law.

3. The trial court properly granted the plaintiff's motion for summary disposition with regard to the counterclaim for disgorgement because there was no genuine issue of material fact to support the claim.

4. The evidence of alleged kickbacks was properly excluded by the trial court on the basis that the evidence was not admissible.

5. The trial court properly exercised its discretion in declining to instruct the jury on after-acquired evidence.

6. The trial court properly denied the motion for remittitur. The evidence supported use of a discount rate of 4.5 percent in reducing the award of future damages to present cash value. There was sufficient evidence to support the award of damages for emotional injury.

Affirmed.

1. LABOR RELATIONS — AT-WILL EMPLOYMENT — DISCHARGE IN VIOLATION OF PUBLIC POLICY.

A cause of action for wrongful discharge from at-will employment may be implied where the alleged reason for the discharge was a failure or refusal to violate a law in the course of employment; such failure or refusal need only be one of the reasons for the employee's discharge and need not be the single reason for the discharge.

2. DAMAGES — FUTURE DAMAGES — PRESENT CASH VALUE.

The civil jury instruction regarding reducing an award of future damages to its present cash value provides for the use of a five percent discount rate for such purposes; there is a rebuttable presumption in favor of the use of the five percent rate (M Civ JI 53.03).

3. EVIDENCE — EMOTIONAL DAMAGES.

A plaintiff may testify regarding his or her own subjective feelings in order to place damages for emotional injury at issue.

*Morris & Doherty, P.C.* (by *E. Michael Morris*), for the plaintiff.

*Jeffery D. Meek & Associates* (by *Jeffery D. Meek*) for the defendants.

Before: BECKERING, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM. In this action seeking damages for wrongful discharge, defendants appeal as of right the November 8, 2006, judgment entered in plaintiff's favor. Defendants also appeal the March 20, 2006, order granting, in part, plaintiff's motion for summary disposition and the December 6, 2006, order denying defendants' motion for remittitur. We affirm.

In August of 1999, defendant Ajay Sports, Inc. (Ajay), hired plaintiff Ronald Silberstein as its chief financial officer (CFO) and chief administrative officer (CAO). Thereafter, plaintiff became the CFO and CAO for defendants Pro-Golf International, Inc. (PGI), Pro-Golf.com, Inc. (PGC), and Pro-Golf of America, Inc. (PGOA). Ajay is the publicly traded parent company of PGI, PGC, and PGOA, a franchise company. Tom Itin is the chief executive officer (CEO) and chairman of the board for all four corporate defendants.[1]

Defendants terminated plaintiff's employment on January 5, 2004. Itin testified that Ajay and its subsidiary companies suffered financially from 1999 to 2003, and that the board of directors voted to discharge plaintiff in order to reduce costs. Plaintiff subsequently filed a complaint against defendants, alleging wrongful discharge in violation of public policy, tortious interference with an advantageous business relationship or expectancy, and conversion. Specifically, plaintiff alleged that Itin pressured him to "cook the books" by

---

[1] Itin was originally named as a defendant in this action, but was subsequently dismissed from the case.

making accounting entries in violation of securities and franchise laws and regulations, and that defendants discharged him because of his refusal to do so. Defendants then filed a motion for summary disposition on all counts, arguing that plaintiff's termination did not fall under the public-policy exception to the at-will employment doctrine, that he was terminated because of poor performance and work force reductions, and that his termination was justified by after-acquired evidence of his own misconduct. Defendants alleged that during discovery, they learned that plaintiff stored pornography on his company computer, sexually harassed other employees, received "kickbacks," and made "questionable" expense charges.

In March of 2004, PGOA filed a counterclaim against plaintiff, alleging breach of contract, breach of fiduciary obligations, and fraud. The counterclaim alleged that plaintiff breached his confidentiality agreement with PGOA, that he received "kickbacks" from PGOA's independent auditors, and that he used PGOA funds to reimburse himself for personal expenses. PGOA asked that plaintiff disgorge any benefits that he wrongfully retained. Plaintiff subsequently filed a motion for summary disposition with regard to PGOA's counterclaim.

Following a February 2006 hearing, Judge Rae Lee Chabot ruled on both parties' motions for summary disposition. The court stated, in relevant part:

> All right, as to Plaintiff's motion for summary disposition as to the counter-claim, as to the breach of contract claim, the Court is granting that motion.
>
> [Defendants] have failed to present any evidence that Plaintiff breached the confidentiality agreement other than speculation. . . .
>
> Regarding the breach of fiduciary duty claim, this is also dismissed, or granted, as Defendants have failed to provide

sufficient evidence in support of this claim. However, the claim for fraud relating to the expense account, the summary disposition is denied. There is sufficient evidence that Plaintiff has charged certain items to the corporate Defendants during his employment and has failed to return those items after his termination, thus, that portion of the motion is denied.

All right, regarding [Defendants'] motion for summary disposition. Again, I'm going to grant in part and deny in part. The motion to dismiss the claim for wrongful termination is denied as Plaintiff has alleged he was terminated due to his refusal to violate not only generally accepted accounting principles [GAAP], but also Sarbanes-Oxley, as well as SEC and FTC rules and regulations. However, to the extent that Plaintiff claims he was terminated for failure to disobey GAAP, this claim is dismissed pursuant to [*Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692; 316 NW2d 710 (1982)].

All right, [Defendants'] assertion that Plaintiff was terminated due to a work force reduction is denied as sufficient [evidence] has been presented to indicate this was a pretext for the wrongful termination such that the issue should be decided by the ultimate fact finder.

[Defendants'] assertion that Plaintiff's claim is barred by the After Acquired Evidence Doctrine is also denied. This doctrine serves to limit damages, not to limit claims. Thus, that portion of the motion is denied but it may be considered as to damages.

Finally, regarding Plaintiff's claim for conversion, this claim is dismissed . . . as Plaintiff has failed to sufficiently allege or to present substantively admissible evidence in support of this claim. I think I hit them all.

The court issued its findings in an order dated March 20, 2006, reiterating that plaintiff's motion for summary disposition was granted with regard to PGOA's counterclaim "concerning purported 'referral fees' and/or 'kickbacks . . . .' "

At trial, Judge Charles W. Simon, Jr., refused to admit evidence of plaintiff's alleged "kickbacks" in light of the March 20, 2006, order. The jury returned a verdict in favor of plaintiff, awarding him $700,000 in economic damages and $150,000 in damages for emotional injury. Thereafter, the trial court issued an amended judgment for $1,320,168.43, including the $850,000 jury verdict, attorney fees, costs, and interest. Defendants subsequently filed a motion for a new trial, judgment notwithstanding the verdict (JNOV), and remittitur. Following a December 6, 2006, hearing, the trial court denied the motion.

I

Defendants first argue that the trial court improperly instructed the jury on the public-policy exception to the at-will employment doctrine. We disagree.

Claims of instructional error are generally reviewed de novo on appeal. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 8; 651 NW2d 356 (2002). But, when the standard jury instructions do not adequately cover an area and a party requests a supplemental instruction, the trial court is obligated to give the instruction if it properly informs the jury of the applicable law and is supported by the evidence. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001). The determination whether a supplemental instruction is applicable and accurate is within the trial court's discretion. *Stoddard v Manufacturers Nat'l Bank of Grand Rapids*, 234 Mich App 140, 162; 593 NW2d 630 (1999).

Generally, employment relationships are terminable at will, with or without cause, "at any time for any, or no, reason." *Suchodolski, supra* at 695. There is, however, an exception to the at-will employment doctrine

"based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* A cause of action for wrongful discharge may be implied "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.*

Defendants argue that this public-policy exception only applies where *the* reason for the employee's discharge was the failure or refusal to violate the law and that the trial court improperly instructed the jury that defendants were liable for wrongful discharge if *one* of the reasons for plaintiff's discharge was the refusal or failure to violate the law.[2] In so arguing, defendants rely on our Supreme Court's pronouncement in *Suchodolski, supra* at 695, that "a cause of action for wrongful

---

[2] The trial court instructed the jury, in relevant part:

The Plaintiff must prove that he was discharged or discriminated against . . . because he failed or refused to violate the law in the course of his employment.

The employer's conduct must have been intentional . . . . Intentional means that *one of the motives or reasons* for Plaintiff's discharge or adverse treatment was his failure or refusal to violate the law . . . .

This does not have to be the only reason, or even the main reason, but it does have to be *one of the reasons* which made a difference in determining whether or not to discharge the Plaintiff.

\* \* \*

Plaintiff has the burden of proof proving that the Defendants discharged the Plaintiff and that Plaintiff's refusal or failure to violate the law . . . was *one of the motives or reasons* which made a difference in discharging the Plaintiff.

Your verdict will be for the Plaintiff if you find the Defendants discharged the Plaintiff and that Plaintiff's refusal or failure to violate the law . . . was *one of the motives or reasons* which made a difference in discharging the Plaintiff.

termination . . . has been found to be implied where *the* alleged reason for the discharge of the employee was the failure or refusal to violate a law . . . ." *Id.* (emphasis added). *Suchodolski*, however, sets forth the facts that a plaintiff must *allege* to *bring a cause of action* for discharge in violation of public policy. Contrary to defendants' argument, *Suchodolski* does not address a plaintiff's burden of proof on a claim of discharge in violation of public police. In *Pratt v Brown Machine Co*, 855 F2d 1225 (CA 6, 1988), the plaintiffs brought a claim for public-policy discharge, relying in part on our Supreme Court's decision in *Suchodolski*. *Pratt, supra* at 1227, 1236. In *Pratt*, the district court instructed the jury that the plaintiffs were required to prove that the employee's refusal to violate the law " 'was *a determinative factor* in the [employer's] decision to terminate the employment relationship.' " *Id.* at 1236 (emphasis added). On appeal, the court determined that this was a proper instruction on the parties' relative burdens of proof. *Id.* at 1238.

Defendants additionally argue that the trial court erred in basing its jury instructions on the instructions for other types of employment actions. But, as plaintiff correctly asserts, courts of this state have recognized that public-policy claims are analogous to claims made under § 2 of the Whistleblowers' Protection Act (WPA), MCL 15.362, and that the WPA is analogous to antiretaliation provisions of other employment-discrimination statutes. In fact, restrictions on an employer's ability to terminate an

---

Your verdict will be for the Defendants if you find the Defendants did not discharge the Plaintiff. You [sic] verdict will also be for the Defendants if you find the Defendants did not—did discharge the Plaintiff, but that Plaintiff's refusal or failure to violate the law was not *one of the motives or reasons* which made a difference in discharging the Plaintiff. [Emphasis added.]

at-will employment agreement are most often found in explicit legislation, such as the WPA and § 701 of the Civil Rights Act (CRA), MCL 37.2701. *Suchodolski, supra* at 695. See also *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 79-80; 503 NW2d 645 (1993), overruled in part on other grounds *Brown v Detroit Mayor*, 478 Mich 589 (2007). The model civil jury instruction for WPA claims states, in part:

> [The] protected activity must be *one of the motives or reasons* defendant [discharged / or / threatened / or / discriminated against] the plaintiff. Protected activity does not have to be the only reason, or even the main reason, but it does have to be *one of the reasons* that made a difference in defendant's decision to [discharge / or / threaten / or / discriminate against] the plaintiff. [M Civ JI 107.03 (original emphasis omitted, new emphasis added).]

The model jury instruction for employment-discrimination claims states, in part:

> Your verdict will be for the plaintiff if you find that defendant [discharged / failed to hire / failed to promote / failed to train / harassed / [other]] the plaintiff, and that [religion / race / color / national origin / age / sex / height / weight / marital status] was *one of the motives or reasons* which made a difference in determining to [discharge / fail to hire / fail to promote / fail to train / harass / [other]] the plaintiff [M Civ JI 105.04 (original emphasis omitted, new emphasis added).]

It is apparent that employment claims analogous to the claim at issue do not require the plaintiff to show that the protected trait or activity is the exclusive reason for discharge. If plaintiffs bringing a claim of discharge in violation of public policy were required to meet such a high burden of proof, as defendants assert, employers could avoid liability simply by raising other, contributing reasons for discharge. Accordingly, we conclude that the trial court properly instructed the

jury with regard to plaintiff's burden of proof on his claim of wrongful discharge.

## II

Next, defendants argue that the trial court erred in denying their motion for a directed verdict. We disagree.

A trial court's decision on a motion for a directed verdict is reviewed de novo on appeal. *Sniecinski v Blue Cross & Blue Shield of Michigan,* 469 Mich 124, 131; 666 NW2d 186 (2003). We review all the evidence presented up to the time of the motion in the light most favorable to the nonmoving party to determine whether a question of fact existed. *Id.*; *Zantel Marketing Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005). "If reasonable jurors could honestly have reached different conclusions, this Court may not substitute its judgment for that of the jury." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 491; 668 NW2d 402 (2003).

In challenging the trial court's denial of their motion for a directed verdict, defendants again rely on our Supreme Court's decision in *Suchodolski*. In that case, the plaintiff alleged that he was discharged for attempting to report his employer's improper accounting practices. *Suchodolski, supra* at 694. The plaintiff relied on two sources to establish that he was discharged in violation of public policy: the internal code of ethics of the Institute of Internal Auditors and the Public Service Commission's regulation of the accounting systems of public utilities. *Id.* at 696. The *Suchodolski* Court found that neither source was sufficient to establish public policy and that the plaintiff's allegations involved nothing more than "a corporate management dispute" with regard to internal accounting practices. *Id.*

In this case, however, plaintiff alleged that Itin pressured him to violate laws and regulations specifically designed to protect the public, i.e., the Sarbanes-Oxley Act, the Securities Exchange Act, and the Code of Federal Regulations. Section 302 of the Sarbanes-Oxley Act requires that all publicly traded companies such as Ajay file financial information with the Securities Exchange Commission (SEC), and that all such information be true and fairly representative of the financial condition of the company. PL 107-204, § 302, 116 Stat 745, 15 USC 7241; see 15 USC 78(m). Likewise, the rules and regulations promulgated by the Federal Trade Commission (FTC) require franchisors such as PGOA to provide accurate written financial disclosures to potential franchisees. 16 CFR 436.

At trial, plaintiff testified that Itin pressured him to "cook the books" with regard to three accounting transactions: the "Vero Beach Sale," "Franchise Fees," and the "MBNA Advance." According to plaintiff, the proceeds from the sale of the Vero Beach property should have been recorded on the books of PGI, the company that sold the property. But, Itin insisted that the proceeds be recorded on PGOA's books instead. Kathy Dix, a certified public accountant (CPA) and former controller for defendants, testified that she was present when Itin instructed plaintiff to make the Vero Beach entry incorrectly. In December of 2003, defendants received two franchise fees and an advance from MBNA Corporation. Several CPAs testified that the franchise fees could not be recorded as income before PGOA performed its obligations to the franchisees and that the MBNA advance could not be recorded as income. Nonetheless, Itin instructed plaintiff to record the franchise fees and the MBNA advance as income for 2003. Joseph White, the former president of PGOA and PGI, testified that Itin put pressure on plaintiff to

record the franchise fees and the MBNA advance in violation of FTC and SEC regulations. According to White's testimony, plaintiff's refusal to record the MBNA advance as income was, in his opinion, "the straw that broke the camel's back."

Viewing this evidence in the light most favorable to plaintiff, defendants cannot establish that no question of fact existed regarding the reason for plaintiff's termination. There was more than enough evidence presented at trial for a reasonable juror to conclude that one of the reasons for plaintiff's termination was refusal or failure to violate the law. Therefore, we conclude that the trial court properly denied defendants' motion for a directed verdict.

III

Defendants also argue that the trial court erred in granting plaintiff's motion for summary disposition with regard to PGOA's counterclaim for disgorgement. Again, we disagree.

We review a trial court's decision on a motion for summary disposition de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review. *Driver v Hanley (On Remand),* 226 Mich App 558, 562; 575 NW2d 31 (1997). When reviewing a motion under MCR 2.116(C)(10), we consider all the evidence submitted by the parties in the light most favorable to the nonmoving party. *Maiden, supra* at 120. Summary disposition should be granted only

where the evidence fails to establish a genuine issue regarding any material fact. *Id.*

In its counterclaim, PGOA alleged that plaintiff breached his fiduciary duties to the company by receiving undisclosed "kickbacks" from outside auditors. In *Central Cartage Co v Fewless*, 232 Mich App 517, 524; 591 NW2d 422 (1998), this Court stated that "[a] fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency." The Court further stated that "[i]f an agent acquires any pecuniary advantage to himself from third parties by means of his fiduciary character, he is accountable to his employer for the profit made." *Id.* at 525 (quotations and citation omitted). A fiduciary has an affirmative duty to disclose to his or her principal. *Brownell v Garber*, 199 Mich App 519, 527; 503 NW2d 81 (1993).

Plaintiff testified that he was a partner in the CPA firm of Hirsch, Silberstein & Subelsky, P.C. (Hirsch firm), until he accepted employment with defendants in August of 1999. At that time, plaintiff entered into a buy-out agreement with his former partner, Daniel Hirsch. Plaintiff's client base at the Hirsch firm included Ajay, PGAO, and PGI, and when plaintiff accepted employment with defendants, those clients were referred to the firm of J.L. Stephen Firm and Co., P.C. (Stephen firm). The Stephen firm agreed to pay a referral fee to the Hirsch firm in order to acquire the clients. Pursuant to his buy-out agreement with Hirsch, plaintiff received 99 percent of the referral fee paid by the Stephen firm to the Hirsch firm.

Both Hirsch and John Morse, an accountant for the Stephen firm, testified that buy-out and referral-fee agreements like those at issue are commonly used to compensate a departing partner for the revenue gener-

ated from the partner's former client base. Moreover, plaintiff disclosed the terms of both agreements to defendants. In a September 1999 letter, Itin expressly stated that defendants were aware of plaintiff's buy-out agreement with Hirsch and that defendants had no objections to the arrangement. Further, while Itin initially denied any knowledge of the referral-fee agreement between the Stephen firm and the Hirsch firm, defendants produced two pages of the agreement during discovery. Itin then admitted that it was possible he was aware of the agreement when he hired plaintiff. Morse confirmed that Itin was aware of both agreements and that Itin discussed the arrangement with him on several occasions. After plaintiff filed his motion for summary disposition, however, Itin signed an affidavit stating that he was never informed that plaintiff received referral fees from the Stephen firm.

Considering the evidence that plaintiff fully disclosed his referral-fee arrangements to defendants, there was no genuine issue of material fact supporting the claim that plaintiff breached his fiduciary duties to PGOA. Although Itin attempted in his affidavit to deny any knowledge of the agreements at issue, "a party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony." *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 155; 565 NW2d 868 (1997). Furthermore, the nonmoving party may not rely on mere allegations or denials, but must go beyond the pleadings to set forth specific facts showing a genuine issue of fact for trial. *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115; 469 NW2d 284 (1991). Accordingly, we find that the trial court properly granted plaintiff's motion for summary disposition.

IV

Next, defendants argue that Judge Simon misinterpreted Judge Chabot's March 20, 2006, order on the parties' motions for summary disposition and improperly excluded evidence of plaintiff's alleged "kickbacks." Generally, the decision whether to admit or exclude evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Elezovic v Ford Motor Co*, 472 Mich 408, 419; 697 NW2d 851 (2005). Interpreting the meaning of a court order involves questions of law that we review de novo on appeal. See *Brown v Loveman*, 260 Mich App 576, 591; 680 NW2d 432 (2004).

Contrary to defendants' argument on appeal, we find that Judge Simon properly interpreted Judge Chabot's March 20, 2006, order in excluding the evidence of plaintiff's alleged "kickbacks." The order granted plaintiff's motion for summary disposition with regard to PGOA's counterclaims "concerning purported 'referral fees' and/or 'kickbacks . . . .' " The order further stated that "Defendants' assertion that Plaintiff's claim is barred by the After Acquired Evidence Doctrine is denied for the reasons set forth on the record; provided, however, that the After Acquired Evidence Doctrine may be considered as to damages . . . ." In light of the fact that Judge Chabot properly granted plaintiff's motion for summary disposition with regard to PGOA's "kickback" allegations, defendants cannot establish that evidence of plaintiff's alleged "kickbacks" was admissible at trial, even with regard to the issue of damages. While Judge Chabot's order indicated that after-acquired evidence could be considered in terms of damages, the order did not state that the "kickback" evidence could be so considered.

Defendants further argue that the trial court erred in refusing to instruct the jury on the after-acquired-evidence doctrine.[3] We disagree. As indicated above, claims of instructional error are generally reviewed de novo, *Cox, supra* at 8, but a trial court's determination whether a supplemental instruction is applicable and accurate is reviewed for an abuse of discretion, *Stoddard, supra* at 162. The after-acquired-evidence doctrine is equitable in nature and is "usually applied in a situation involving termination or another adverse employment action to ensure that an employee does not benefit from the employee's own misconduct or misrepresentation. The rationale of the cases applying the rule is that a plaintiff who was not entitled to the employment in the first place cannot claim economic damages for the loss of it." *Grow v WA Thomas Co*, 236 Mich App 696, 710; 601 NW2d 426 (1999).

Defendants argue that evidence of plaintiff's alleged "kickbacks," improper expenditures, stealing of company property, and storage of pornography on a company computer necessitated a jury instruction on the after-acquired-evidence doctrine. But, the trial court properly excluded the alleged "kickback" evidence. Furthermore, there is no evidence indicating that plaintiff would have been terminated for any other alleged misconduct and the trial court found that "there was not a scintilla of evidence" about the value of the items plaintiff allegedly stole from defendants. Therefore, we conclude that the trial court properly exercised its discretion in declining to instruct the jury on after-acquired evidence.

---

[3] Plaintiff's assertion that defendants failed to preserve this issue is without merit. Defendants specifically requested that the trial court instruct the jury on after-acquired evidence, but the court declined to do so.

v

Finally, defendants argue that the trial court abused its discretion in denying their motion for remittitur. We disagree. In determining whether remittitur is appropriate, a trial court must decide whether the jury award was supported by the evidence. *Diamond v Witherspoon*, 265 Mich App 673, 693; 696 NW2d 770 (2005). This determination must be based on objective criteria relating to the actual conduct of the trial or the evidence presented. *Palenkas v Beaumont Hosp*, 432 Mich 527, 532; 443 NW2d 354 (1989). The power of remittitur should be exercised with restraint. *Hines v Grand Trunk W R Co*, 151 Mich App 585, 595; 391 NW2d 750 (1985). If the award for economic damages falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation, the jury award should not be disturbed. *Palenkas*, *supra* at 532-533. A trial court's decision regarding remittitur is reviewed for an abuse of discretion. *Id*. at 533. We review all the evidence in the light most favorable to the nonmoving party. *Wiley*, *supra* at 499.

According to defendants, the jury's award of $700,000 in economic damages was grossly excessive. It is undisputed that at the time of plaintiff's discharge, he made a salary of approximately $131,000 a year. Plaintiff testified that he was also promised a $50,000 annual bonus. Thea Werner, a consulting actuary, prepared a report calculating the net present value of plaintiff's economic losses based on his past and future lost wages, his wage-earning capacity, and interest. Werner testified that the net present value of plaintiff's economic losses was $1,150,000, including the annual $50,000 bonus, or $550,000 not including the bonus.

Defendants argue that in calculating damages, Werner improperly used a discount rate of 4.5 percent instead of the 5 percent discount rate described in M Civ JI 53.03. M Civ JI 53.03 deals with reducing future damages to present cash value. The instruction states:

> If you decide plaintiff will sustain damages in the future, you must reduce that amount to its present cash value. The amount of damages you determine *[he / she]* will sustain the first year is to be divided by 1.05. The amount of damages you determine *[he / she]* will sustain the second year is to be divided by 1.10. The amount *[he / she]* will sustain the third year is to be divided by 1.15. You then continue to use a similar procedure for each additional year you determine *[he / she]* will sustain damages. The total of your yearly computations is the present cash value of plaintiff's future damages.

The notes to the instruction state, in part:

> The reduction to present value called for by this instruction is based on a 5 percent simple interest calculation. This rate has been approved in numerous cases. See cases collected in *Pontiac School District v Miller, Canfield, Paddock & Stone*, 221 Mich App 602; 563 NW2d 693 (1997). In cases in which the court determines that a 5 percent simple interest rate is not appropriate, this instruction should be revised. *See Pontiac School District.*

In *Pontiac School Dist, supra* at 633-634, the trial court indicated that it was legally obligated to apply the 5 percent discount rate described in SJI2d 53.03, presently M Civ JI 53.03. On appeal, however, this Court stated that the applicability of a standard jury instruction is within the trial court's discretion. *Pontiac School Dist, supra* at 635. The Court concluded that although SJI2d 53.03 creates a presumption in favor of the 5 percent discount rate, the defendant had successfully rebutted the presumption because the case involved

"fixed-debt obligations that were susceptible of a sum certain determination unaffected by inflation" and the defendant "presented undisputed evidence that the present value of [the] plaintiff's future damages was determined by using actual market rates that are compounded." *Pontiac School Dist, supra* at 636.

In this case, plaintiff rebutted the presumption for using the 5 percent discount rate described in M Civ JI 53.03 with Werner's undisputed testimony that a 4.5 percent discount rate reflected the current interest rates on 20-year treasury bonds. Moreover, the jury heard Werner testify that using a 5 percent discount rate, rather than a 4.5 percent discount rate, would lower plaintiff's future economic losses by less than 10 percent. Considering Werner's testimony that plaintiff would suffer net present-value economic losses between $550,000 and $1,150,000 and that Werner was the only witness who testified about plaintiff's economic damages, the jury's award of $700,000 fell reasonably within the range of evidence presented.

Next, defendants argue that there was no evidence presented at trial supporting an award of emotional damages. A plaintiff may testify regarding his or her own subjective feelings to place emotional damages at issue. *Wilson v Gen Motors Corp*, 183 Mich App 21, 40; 454 NW2d 405 (1990). In *Wilson*, this Court upheld an award of $375,000 in emotional damages where the plaintiff submitted "only testimony as to her own subjective feelings" after being terminated on the basis of race and gender. *Id.* Here, plaintiff testified that Itin repeatedly pressured him to make illegal accounting entries, that making such entries would have exposed him to potential criminal and civil liability, and that he was terminated as a result of his refusal to violate the law. Given this evidence, the jury's award of $150,000 in

emotional damages was not unreasonable, even considering the purely subjective nature of plaintiff's evidence.

Defendants further argue that the jury's verdict may have been influenced by bias or prejudice. Specifically, defendants assert that the jury may have become biased against defendants after hearing plaintiff's counsel state that Itin committed perjury. While it is true that Itin was not a convicted perjurer, he admitted giving inaccurate testimony about the Vero Beach property at his deposition. Moreover, there is no evidence that the jury's verdict was actually prejudiced as a result of counsel's reference to Itin as a perjurer.

Defendants also object to the amount of attorney fees awarded to plaintiff. But the jury did not award plaintiff attorney fees. The trial court awarded plaintiff attorney fees as case-evaluation sanctions. Because defendants have not appealed the trial court's award of case-evaluation sanctions and remittitur is only justified if the *jury verdict* is excessive, *Palenkas, supra* at 531, we decline to address the issue.

Viewing the evidence in the light most favorable to plaintiff, the jury reached a verdict within the limits of what reasonable minds would deem just. Therefore, we find that the trial court did not abuse its discretion in denying defendants' motion for remittitur.

Affirmed.