RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LYNN A. MORRISON,

        *Plaintiff-Appellee,*

    *v.*

B. BRAUN MEDICAL INCORPORATED,

        *Defendant-Appellant.*

No. 10-1548

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-13567—David M. Lawson, District Judge.

Argued: October 6, 2011

Decided and Filed: December 8, 2011

Before: MARTIN and GRIFFIN, Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** R. Ted Cruz, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas, for Appellant. Deborah L. Gordon, DEBORAH L. GORDON, PLC, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Allyson N. Ho, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas, for Appellant. Deborah L. Gordon, Carol A. Laughbaum, DEBORAH L. GORDON, PLC, Bloomfield Hills, Michigan, for Appellee.

_____

## OPINION

_____

    BOYCE F. MARTIN, JR., Circuit Judge. This is a wrongful discharge case. Lynn A. Morrison was terminated from her job as a medical sales representative by her employer, B. Braun Medical Inc. Morrison filed a complaint alleging that B. Braun had

---

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

wrongfully discharged her in violation of Michigan's public policy because of her refusal to unlawfully promote non-approved uses of medical products and to violate anti-kickback laws. The case was tried to a jury. The district court denied a motion by B. Braun for judgment as a matter of law, and the jury returned a verdict for Morrison. B. Braun filed a renewed motion for judgment as a matter of law, which the district court also denied. B. Braun appeals this decision, arguing that the district court erred by not requiring Morrison to prove to the jury that B. Braun directed her to violate the law and in finding that Morrison had presented sufficient evidence to prove that the cause of her termination was her refusal to violate the law. For the following reasons, we **AFFIRM**.

## I.

Morrison was an at-will employee at B. Braun, a Pennsylvania corporation that manufactures and sells pharmaceutical and medical products. She worked as a medical sales representative at B. Braun from October 1998 until her termination on April 2, 2007. Morrison worked out of her home promoting and selling pain control products to hospitals in Michigan. While employed by B. Braun, Morrison repeatedly told her supervisors that she was unwilling to unlawfully promote medical products "off-label" or to violate anti-kickback laws.

With limited exceptions, federal law prohibits the marketing of "off-label" uses of medical products—the practice of using or prescribing a medical product approved by the Federal Drug Administration for indications or in dosages other than those approved by the Administration. *See Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 408 (6th Cir. 2008). Morrison expressed her discomfort with off-label promotion as early as January 2000, when she sent an e-mail to her manager noting her concerns about the practice. During a training session conducted by B. Braun in November 2000, trainers instructed the sales representatives to promote off-label uses of the drug Pentaspan. Morrison verbally objected to these instructions. According to Morrison's testimony, her regional manager, who was also in attendance, pulled her out of the meeting and admonished her for her comments.

During a 2003 sales meeting attended by Morrison and other sales representatives, a B. Braun lead sales representative described how she circumvented federal anti-kickback laws by channeling gift money through third parties, and she instructed the attendees to do the same. Following this meeting, Morrison declined to sign a compliance training form attesting that she had no knowledge of any non-compliant behavior within the company. Morrison explained to B. Braun's Compliance Department that she was not comfortable signing the form because she knew of the lead sales representative's violations of anti-kickback laws. Morrison then agreed to sign the form with a notation reflecting her conversation about the matter with the Compliance Department.

In early 2006, Morrison alerted her supervisors to a customer request that she believed would constitute a violation of anti-kickback laws if fulfilled by B. Braun. One of Morrison's customers, Oakwood Hospital, let its group purchasing contract with B. Braun lapse at the end of 2005 and failed to sign a new contract until January 18, 2006. During the eighteen-day period in which Oakwood was not under contract, its purchases from B. Braun were priced at a higher level. After signing a new contract on January 18, Oakwood requested that Morrison adjust the prices on the purchases it made earlier that month to reflect the lower pricing it would have received had it signed the 2006 contract on time, a difference of $730. Morrison declined the request, and Oakwood responded by asking for the $730 difference in the form of free goods. Morrison declined Oakwood's second request, concerned that such an arrangement might be an illegal kickback.

Morrison discussed her concerns about Oakwood's requests with her supervisors, Kathy Brunette-Sawyers and Greg Sturdivant. Morrison testified that Brunette and Sturdivant told her to "make the customer happy" and suggested she move forward with a "credit and rebill." Morrison told her supervisors she was unwilling to grant a "credit and rebill" because she believed it would violate anti-kickback laws. Morrison requested advice from Cathy Codrea in the Compliance Department regarding the legality of a "credit and rebill." Codrea discussed the matter with Brunette and

Sturdivant. Following her conversation with Codrea, Brunette called Morrison on April 4. Brunette screamed at Morrison, accused her of insubordination for taking the matter to Codrea, and, Morrison testified, told her that her "job was in jeopardy." On April 6, Codrea informed Morrison that B. Braun would not give Oakwood a pricing adjustment.

On May 23, Morrison attended a sales training session for the pain product Accufuser. B. Braun hosted the session at which a trainer instructed B. Braun's sales representatives, managers, and Brian Maser, the Vice President of Morrison's sales region, to market off-label uses of Accufuser. During the training, Morrison objected verbally to the trainer's instructions to promote off-label uses. The trainer responded that off-label promotion was not a problem. Neither Maser nor the managers in attendance responded to the trainer's assertion that off-label promotion of Accufuser was acceptable. Morrison testified that Maser glared at her angrily. Morrison reported this episode to Brunette, who agreed that the instructions to promote off-label were improper. In early August, Morrison spoke with Codrea about her concerns regarding off-label promotion of Accufuser. Codrea responded on August 10 by sending a company-wide e-mail warning that off-label promotion is against the law and against company policy.

After the Accufuser training, Morrison received two customer complaints. On May 25, a hospital customer complained to Brunette about Morrison's tone in an e-mail communication. Brunette reviewed Morrison's communication and found nothing objectionable. B. Braun took no action against Morrison. A second hospital customer complained to Maser about Morrison in July. Morrison had declined the customer's request to run a fourth trial of a medical product because she believed the customer was a poor sales prospect and had already received more than a typical number of trials. According to Maser, the customer said she was angry about the manner in which Morrison informed her of B. Braun's decision to deny the hospital a fourth trial.

Morrison testified that Maser phoned her on July 13 and spoke with her about the two customer complaints against her and informed Morrison that she had declining sales numbers. Maser also spoke with Brunette about these matters. On August 1, Morrison

received a letter from Maser warning her that continued customer complaints could lead to discipline "up to and including termination." On August 4, Maser placed Morrison on a ninety-day Performance Improvement Plan. The Plan required Morrison to not receive any more customer complaints, to complete interpersonal training, and to meet certain sales quotas for three products by December 1. Morrison objected to the Plan's sales goals because she believed they were "unreasonable" and not achievable.

Morrison complied with the Plan's training requirements. Morrison also received no new customer complaints. Morrison did not meet the Plan's sales quotas for two of the three products, although she exceeded her annual total sales quota. On December 11, Brunette informed Morrison that she had failed to meet the goals in her Plan.

B. Braun transferred Morrison to a new sales zone, effective January 1, 2007, where she reported to a new vice president, Tony Zimmermann, and a new regional manager, Jay Anthony. On December 11, 2006, the day they first met with Morrison, Zimmermann and Anthony informed Morrison they were placing her on a new Performance Improvement Plan that would start on January 1 because she had not reached the goals in her previous Plan. Morrison believed the sales goals in the new Plan were unattainable and even more unreasonable than those in the first Plan. During the first week of January, Zimmermann and Anthony, following the advice of Human Resources, offered Morrison a severance package to quit. Morrison did not accept the offer.

On April 2, 2007, B. Braun fired Morrison. Although she had exceeded the sales goal for pain control medication in the second Plan, she had not met the goals for the other two products. Morrison testified that B. Braun representatives told her she was terminated because she did not meet the goals in the new Plan.

B. Braun ranked Morrison as its third-best sales representative out of thirty-five in 2004, and tenth-best out of thirty-three in 2005. In the first six months of 2006, B. Braun ranked Morrison thirty-first out of thirty-three. In 2003, Morrison did not meet

her sales quota for two of her sales products, and in 2004 she did not meet her quota for two out of three categories of products.

Morrison filed a complaint against B. Braun alleging that B. Braun had discharged her in retaliation for her refusal to violate the law. B. Braun filed a motion for summary judgment. The district court granted B. Braun's motion for summary judgment on the ground that Morrison had failed to show causation. Morrison filed a motion for reconsideration of the district court's order granting summary judgment. The district court granted Morrison's motion for reconsideration, vacated the order granting summary judgment, and denied B. Braun's motion for summary judgment.

The case proceeded to a jury trial. At trial, B. Braun made an oral motion for judgment as a matter of law, which the district court denied. B. Braun requested that the district court instruct the jury that Morrison must present evidence of "an employer directive to violate the law" to prove her claim. The district court denied this request.

The jury found for Morrison on her claim of wrongful discharge in violation of public policy. The district court entered judgment for Morrison in the sum of $880,000. B. Braun renewed its motion for judgment as a matter of law after the trial. The district court denied B. Braun's renewed motion for judgment as a matter of law.

On appeal, B. Braun argues that the district court erred because Morrison failed to prove (a) the existence of an employer directive to violate the law, and (b) the causation element of her claim.

## II.

This Court reviews de novo a district court's decision to grant or deny a motion for judgment as a matter of law. *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 764 (6th Cir. 2008). When federal jurisdiction is based on diversity of citizenship, as here, this Court "applies the standard for a directed verdict used by the courts of the state whose substantive law governs the action." *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 645 (6th Cir. 1991). The law of Michigan governs this action. Under Michigan's standard of review, a motion for judgment as a matter of law should be granted "[o]nly if the

evidence so viewed fails to establish a claim as a matter of law." *Wilkinson v. Lee*, 617 N.W.2d 305, 307 (Mich. 2000) (citing *Orzel by Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 212 (Mich. 1995)). This Court reviews "the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Id.*

## A. Employer Directive to Violate the Law

B. Braun argues that the district court erred in denying its renewed motion for judgment as a matter of law with regard to B. Braun's claim that Morrison failed to prove that B. Braun directed her to violate the law. B. Braun argues that a claim of wrongful discharge requires proof of an employer directive to violate the law. We find that B. Braun's proposed definition of wrongful discharge in violation of public policy is an inaccurate statement of the law.

Michigan's general rule regarding termination of an at-will employee is that either party may terminate the employment contract at any time for any or no reason; however, courts recognize an exception to this rule when the grounds for termination violate public policy. *See Sucholdoski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). The courts have implied a cause of action for wrongful termination in violation of Michigan's public policy where "the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.*; s*ee also Humenny v. Genex Corp.*, 390 F.3d 901, 907 (6th Cir. 2004) ("An at-will employee's discharge violates public policy if the employee is discharged (1) in violation of an 'explicit legislative statement [ ] prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty,' (2) for 'failure or refusal to violate a law in the course of employment,' or (3) for the 'exercise of a right conferred by a well-established legislative enactment.'") (quoting *Sucholdoski*, 316 N.W.2d at 711-12); *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1236 (6th Cir. 1988) (citing *Sucholdoski*, 316 N.W.2d at 711).

Courts applying Michigan law have consistently defined the wrongful discharge tort at issue here as an employer's termination of an employee because of the employee's "failure or refusal to violate a law in the course of employment." *Humenny*, 390 F.3d at

907; *Sucholdoski*, 316 N.W.2d at 711; *Silberstein v. Pro-Golf of Am., Inc.*, 750 N.W.2d 615, 621 (Mich. Ct. App. 2008). No Michigan court has defined this cause of action to require a plaintiff to show that the employer directed him or her to violate the law.

B. Braun points to the decision in *Pratt*, where this Court found that a plaintiff's evidence of his refusal to comply with his employer's request that he drop a criminal investigation was "sufficient" to prove that he refused to violate the law. *Pratt*, 855 F.2d at 1237. The language in *Pratt* does not demonstrate the existence of an additional element of the wrongful discharge tort, but instead reflects that the plaintiff in *Pratt* presented evidence of his employer's request that he violate the law in order to prove his own refusal to do so. While this Court looked to the evidence of the employer's request in *Pratt* to determine that the plaintiff refused to violate the law, we agree with the district court that a wrongful discharge claim does not depend upon a showing of a directive or request by the employer. We affirm the district court's judgment with regard to this claim.

B. Braun also argues that the district court erred in refusing to give B. Braun's requested jury instruction requiring Morrison to show that B. Braun directed her to violate the law. This Court reviews a district court's refusal to give a party's requested jury instructions under an abuse of discretion standard. *See United States v. Roth*, 628 F.3d 827, 833 (6th Cir. 2011). This Court may find that a district court's refusal to give a requested jury instruction was an abuse of discretion if: "(1) the omitted instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) (citing *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 445 (6th Cir. 2005)).

As determined above, B. Braun's requested jury instruction is not a correct statement of the law. Accordingly, we find that the district court's refusal to give B. Braun's jury instruction was not reversible error.

**B. Proof of Causation**

B. Braun challenges the district court's denial of judgment as a matter of law with regard to causation. B. Braun argues that the district court erred in finding that Morrison presented sufficient evidence that her failure or refusal to violate the law was the reason for her discharge.

Under Michigan law, a motion for judgment as a matter of law may be granted only if the evidence "fails to establish a claim as a matter of law." *Wilkinson*, 617 N.W.2d at 307. To establish a claim of wrongful discharge, a plaintiff must prove that "*one of the motives or reasons* for Plaintiff's discharge or adverse treatment was his failure or refusal to violate the law." *Silberstein*, 750 N.W.2d at 622 (affirming judgment for plaintiff and concluding that the jury instructions regarding causation were proper).[1] A plaintiff need not show "that the protected trait or activity is the exclusive reason for discharge." *Id.*

We find that Morrison introduced sufficient evidence from which a reasonable juror could have concluded that one of the reasons that made a difference in B. Braun's decision to fire Morrison was her refusal or failure to violate the law. Such a conclusion is sufficient to establish a claim of wrongful termination as a matter of law. *See Id.* at 624 ("There was more than enough evidence presented at trial for a reasonable juror to conclude that one of the reasons for plaintiff's termination was refusal or failure to violate the law.").

In returning a verdict for Morrison, the jury found that she had sufficiently proved that one of the reasons for her discharge was her failure or refusal to violate the law. The jury considered causation evidence presented by Morrison that included, but

---

[1] Decisions by the Michigan Court of Appeals are binding authority where the Michigan Supreme Court has never addressed the issue decided therein. *Hampton v. United States*, 191 F.3d 695, 702 (6th Cir. 1999) (quoting *Wieczorek v. Volkswagenwerk*, 731 F.2d 309, 310 (6th Cir. 1984)) ("In order to determine the Michigan law, we thus turn to the decisions of the Michigan intermediate courts, which are binding authority in federal courts in the absence of any Michigan Supreme Court precedent."); *Tebo v. Havlik*, 343 N.W.2d 181, 185 (Mich. 1984) ("A decision by any panel of the Court of Appeals is, therefore, controlling statewide until contradicted by another panel of the Court of Appeals or reversed or overruled by this Court."). Because the Michigan Supreme Court has not addressed the precise causation standard required of a plaintiff in a wrongful termination case, this Court follows the standard set by the Michigan Court of Appeals in *Silberstein v. Pro-Golf of America, Inc.*, 750 N.W.2d 615.

was not limited to, the following: B. Braun's instructions to Morrison and other sales representatives to violate the law; Morrison's repeated refusals to violate the law and her internal reporting of unlawful activities; B. Braun's decision to place Morrison on a Performance Improvement Plan following her refusals to violate the law; the placement of Morrison on a second Plan by a supervisor with whom she had never worked and by whom she had never been evaluated; B. Braun's offer of a severance package to Morrison several days after she began the second Plan; and the fact that Morrison's sales performance was not abnormally poor and was historically better than other employees who were never placed on a Plan.

B. Braun has not demonstrated that the evidence presented fails to establish a claim as a matter of law. At trial, Morrison presented sufficient evidence for a reasonable juror to conclude that one of the reasons for her discharge was her failure or refusal to violate the law. Accordingly, we find that the district court properly denied B. Braun's renewed motion for judgment as a matter of law on the basis of causation.

## III.

Finding no merit to B. Braun's claims, we therefore **AFFIRM** the district court's judgment and order denying B. Braun's motion for judgment as a matter of law.