NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0589n.06

No. 10-2584

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 07, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| AMANDA LANDIS, Personal Representative for the Estate of Charles Christopher Keiser, Deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| GREG GALARNEAU, | ) ) | |
| Defendant-Appellee. | ) | |

Before: BOGGS, NORRIS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Plaintiff Amanda Landis brought this action under 42 U.S.C. § 1983, alleging that Michigan State Trooper Greg Galarneau used excessive force in seizing her father, Charles Keiser, thereby causing his death. After a trial, the jury found that Galarneau had not violated Keiser's constitutional rights, and the district court entered judgment for Galarneau. Landis then moved for a new trial, claiming errors in jury instructions, admission of expert testimony, and defense counsel's closing arguments. The district court denied her motion. We affirm.

On November 25, 2004, police officers responded to complaints that a large construction vehicle was blocking U.S. Highway 23 in Livingston County. They found Keiser on the median attempting to enter another construction vehicle and ordered him to stop. Keiser fled across the highway. Eventually, Michigan State Trooper Todd Cardoza tackled Keiser. Galarneau arrived at

the scene and attempted to subdue Keiser, but Keiser grabbed Galarneau by the throat and began choking him. Galarneau responded with pepper spray, and Keiser released his grip. Keiser then walked away into the woods. The officers followed him until he stopped in a swampy area, where he stood in mud and water up to his knees. Galarneau and Cardoza held back until they were joined by Livingston County Sheriff's Deputies Jim Lynch and Jason Baker. Then the officers repeatedly asked Keiser to step out of the water, but he did not respond. Eventually, Galarneau told Lynch to use his taser. Lynch did so, but the prongs could not penetrate Keiser's coat. Some of the officers then rushed Keiser and tried to capture him. Lynch used his taser, set to operate on contact, a few more times, and Galarneau struck Keiser with his baton. At this time, Keiser was using his arms to push his head and shoulders above the water. In the melee, Keiser fell or was forced down into the water. The officers tried to handcuff him. At some point, Keiser's head went underwater—whether because of his own actions or the officers' is in dispute. When Lynch noticed that Keiser's head was underwater, he pulled on Keiser's hair in an attempt to lift his head. The officers finally succeeded in handcuffing Keiser and removed him to dry land. They discovered that he was lifeless and called for an ambulance. Autopsies later revealed that Keiser had drowned to death.

Landis filed suit against the officers and Livingston County. The district court denied summary judgment to the officers, and we affirmed. *See generally Landis v. Baker*, 297 F. App'x 453 (6th Cir. 2008). Before trial, the court dismissed all defendants but Galarneau (largely as a result of settlements). Thus, the sole issue at trial was whether Galarneau violated Keiser's Fourth Amendment right to be free from excessive force during a seizure. After five days of trial, the jury deliberated for fifteen minutes and returned a verdict for Galarneau. Landis moved for judgment as

a matter of law or, in the alternative, a new trial. The district court denied the motion. Landis appeals the denial of a new trial. (She did not contest the denial of judgment as a matter of law until her reply brief, and has therefore waived that issue. *See Sanborn v. Parker*, 629 F. 3d 554, 579 (6th Cir. 2010).)

Landis first challenges the district court's failure to give two of her requested jury instructions. We review a district court's refusal to give a party's requested jury instructions for an abuse of discretion. *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 (6th Cir. 2011). That refusal constitutes an abuse of discretion when "(1) the omitted instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Id.* (quotation omitted).

Landis's first proposed instruction stated that Galarneau could be liable for the actions of the other officers and that "[h]is participation" in the events at issue "is sufficient" to find him liable. But her instruction is not entirely correct. The law is actually that "[e]ach defendant's liability must be assessed individually, based on his or her own actions." *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008). Sometimes those actions are unconstitutional because of their effects on the behavior of other officers. For example, when an officer fails to prevent a second officer's use of excessive force, the first officer may be liable. *See Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008). Likewise, an officer may be liable for "signaling" to another officer that the latter should use excessive force, or for "participating in the tactical decision" to use such force. *Id.* at 407. But an officer's mere participation in events that include the use of excessive force is not itself sufficient grounds to impose liability. *See Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007). Only when

an officer has "direct responsibility for the challenged action"—here, the allegedly excessive force—may he be liable. *Id.*

Thus, Landis was required to show that Galarneau himself violated the Constitution by asking another officer to use excessive force or by failing to stop him from doing so. Admittedly, that is part of what Landis alleges happened here: she says that Galarneau asked Lynch to tase Keiser and that he did not stop the other officers from causing Keiser's head to become submerged. But that is not what Landis's proposed instruction said. Rather, it erroneously stated that Galarneau could be liable for mere participation and suggested that the jury need not analyze his actions specifically.

Instead of reading either party's proposed instruction, the district court told the jury that Galarneau would be liable if he "performed acts that operated to deprive Charles Keiser of one or more of his federal constitutional rights[.]" This instruction was not as specific about liability for another officer's actions as Landis may have liked. But it did correctly state the law, whereas the instruction that Landis requested did not. So we reject this argument.

Landis's second proposed instruction stated that the jury need not "find that the Defendant had any specific intent" to violate the Fourth Amendment "in order to find in favor of the Plaintiff." In support, Landis points out that an officer's bad motives do not matter for an excessive-force claim. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). But the district court correctly instructed the jury on this point: "The question is whether the defendant, Greg Galarneau's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force. Nor will an officer's good intentions make an objectively

unreasonable use of force constitutional." [Rec. 159, 2/16/10 Transcript at 126.] The last two sentences are a direct quotation from *Graham*. Thus, we reject this argument as well.

Landis next argues that a defense expert witness misstated the law by claiming that Galarneau had no duty to protect Keiser from harm until Galarneau handcuffed him. As an initial matter, this testimony seems to implicate a legal question, rather than a factual one, so it was likely inadmissible. *See Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible"). But Landis did not object to this testimony, which means that we review its admission only for plain error. *See Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 548 (6th Cir. 2003). Landis must therefore show that the error affected her "substantial rights[.]" *Id.*

She cannot do so. Landis's principal theory at trial was not that Galarneau failed to protect Keiser, but that Galarneau himself used or requested the use of excessive force. Any prejudice from the expert's testimony is not sufficient to warrant a new trial under the standard of plain-error review.

Finally, Landis complains about a litany of supposedly improper remarks that Garlaneau's lawyer, James Farrell, made during closing argument. Ordinarily, improper remarks warrant a new trial in civil cases only when "there is a reasonable probability that" they influenced "the jury's verdict." *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004). But Landis must make an even stronger showing here, since again she did not object to the remarks. *Id.*

Landis first challenges Farrell's claim that, if a police officer does not "have control" over a suspect, he has no "duty to take care of the guy." As Landis points out, these comments misstate the test for when an officer "owe[s] the victim a duty of protection against the use of excessive

force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). That duty arises "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* A defendant-officer might be liable for failure to protect when he could stop another officer from using excessive force even when the defendant did not himself have control of the suspect. Even so, failure-to-protect was not Landis's main theory at trial. And the court instructed the jury to follow the law as stated by the court in its instructions. Landis has not shown sufficient prejudice to warrant a new trial.

Landis also argues that some of Farrell's comments were misleading. Farrell pointed out that "Galarneau is the only defendant here." Landis notes that other defendants had settled, and faults Farrell for omitting this detail; but she admits that it would have been improper "to put the fact of settlement in front of the jury." But there was nothing improper about Farrell's truthful statement, which focused the jury on the issue at hand. Similarly, Farrell pointed out that Landis had no evidence—and made no argument—that any officer had affirmatively held Keiser's head under the water. This statement too was accurate.

Landis also complains about Farrell's comment that "there's some embellishment" in Landis's story about how often she spoke with her father, which was relevant to the question of damages. Farrell's remark went to the point that Landis had initially told the police that she had not had much contact with Keiser, but that, after she filed suit, she claimed to have seen him frequently. Suffice it to say that this comment was fair game. The same is true for Farrell's comment that

Landis's expert was "bought and paid for" and therefore would say "whatever the lawyer told him to say," since the expert here testified that he had been paid for his testimony.

Landis next contends that Farrell impermissibly vouched for the defense witnesses when he said that the officers "all felt comfortable testifying which tells me that they're telling the truth." Although Farrell phrased his comment in terms of what the evidence told him, it is clear that he was permissibly "argu[ing] reasonable inferences from the evidence." *Collins*, 78 F.3d at 1040.

Two other comments might be more problematic. Farrell said that the Michigan State Police was, "in [his] opinion," the "most professional police force we have in the state" and thus the agency's finding, offered in evidence, that Garlaneau did not breach any duty should carry some weight. Similarly, Farrell argued that his expert witness had proven himself unbiased by emphasizing officers' duty to act ethically. Farrell said "I believe him. He would have told me the truth, I'm sure." He concluded that the expert is "a very honorable guy." These comments arguably state Farrell's opinion based on personal knowledge, rather than merely suggesting a conclusion drawn from the evidence. But this sort of ambiguity is precisely the sort that a party should bring to the court's attention on the spot—when it can be easily clarified—rather than asking for a new trial later. And in any event, the judge instructed the jury that counsel's arguments were not evidence. Landis cannot show that she was prejudiced by any of Farrell's comments in closing argument.

Landis also argues that, in analyzing Farrell's comments, we should hold him to the higher standard of a government prosecutor. But we need not consider the merits of that argument, because we would not grant relief based upon these comments in any event.

The judgment of the district court is affirmed.