# STATE OF MICHIGAN

# COURT OF APPEALS

JASON BLACKBURN,

      Plaintiff-Appellant/Cross-Appellee,

v

ALAIN Y. FABI, M.D. and BRONSON
METHODIST HOSPITAL,

      Defendants-Appellees/Cross-
      Appellants,

and

DAVID E. REMMLER, M.D., W. A. FOOTE
MEMORIAL HOSPITAL, ALLEGIANCE
HEALTH SERVICES, and INDEPENDENT
EMERGENCY PHYSICIANS, P.C.,

      Defendants-Appellees.

UNPUBLISHED
April 17, 2018

No. 336454
Kalamazoo Circuit Court
LC No. 2013-000423-NH

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff, Jason Blackburn, appeals by right the trial court's order striking three of his experts as a sanction and its order granting the motion for summary disposition by defendants, David E. Remmler, M.D., W. A. Foote Memorial Hospital, Allegiance Health Services, and Independent Emergency Physicians, P.C., after remand from this Court.[1] On cross-appeal, defendants, Alain Y. Fabi, M.D. and Bronson Methodist Hospital, appeal the trial court's order imposing sanctions on them for submitting a proposed order in violation of MCR 2.114(D). For the reasons more fully explained below, we reverse in part, affirm in part, and remand for further proceedings.

---

[1] See *Blackburn v Fabi*, unpublished per curiam opinion of the Court of Appeals, issued May 24, 2016 (Docket No. 327595). In the interests of brevity, we will not repeat the facts in this opinion.

-1-

## I. DISCOVERY SANCTION

## A. STANDARD OF REVIEW

Blackburn again challenges on appeal the trial court's decision to strike his expert witnesses as a sanction for violating a discovery order; the three expert witnesses were his neurosurgeon, Monte Brian Weinberger, M.D., and, Robert Ancell, Ph.D., and Nitin Paranjpe, Ph.D., who were to offer testimony on Blackburn's damages. After carefully reviewing the record, we agree that the trial court abused its discretion when it in effect dismissed Blackburn's case as a sanction for violating a discovery order.

This Court reviews for an abuse of discretion a trial court's decision to impose a sanction for a discovery violation. *Dean v Tucker*, 182 Mich App 27, 31-32; 451 NW2d 571 (1990). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). This Court, however, reviews de novo whether the trial court correctly selected, interpreted, and applied the relevant court rules. *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). This Court also reviews de novo the proper interpretation of the discovery order at issue. See *Silbertstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008). This Court reviews the trial court's factual findings underlying its decision to impose a sanction for clear error. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). A trial court's findings are clearly erroneous when, after reviewing the record, this Court is left with the definite and firm conviction that the trial court made a mistake. *Loutts*, 298 Mich App at 26.

## B. ANALYSIS

Trial courts have the inherent authority to enforce their orders. See *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006); *Brenner v Kolk*, 226 Mich App 149, 159-160; 573 NW2d 65 (2002) (stating that, even when there is no statute or court rule addressing a particular form of misconduct, trial courts have the inherent authority to sanction litigants to protect the integrity of the judicial system). The court rules further provide that a trial court may "order such sanctions as are just" when a party "fails to obey an order to provide or permit discovery." MCR 2.313(B)(2). A trial court has a range of sanctions available to it to punish violations of its discovery orders: it may treat a fact as established, prohibit the disobedient party from supporting or opposing a designated claim or defense, prohibit the disobedient party from introducing particular evidence, strike pleadings in whole or in part, stay proceedings, dismiss an action or enter a default, order the disobedient party to compensate the opposing party for his or her costs and fees, hold the disobedient party in contempt, or fashion any other remedy that is just under the circumstances. MCR 2.313(B)(2); see also *MacArthur Patton Christian Assoc v Farm Bureau Ins Group*, 403 Mich 474, 478; 270 NW2d 101 (1978) (listing alternate sanctions that would have been more appropriate for the discovery violation at issue); *Brenner*, 226 Mich App at 161 (stating that trial courts should carefully fashion a sanction that denies the party the fruits of their misconduct). Trial courts must carefully review all the factors involved in the case and consider the full range of possible sanctions and then select the sanction that is "just and proper in the context of the case before it." *Dean*, 182 Mich App at 32.

When selecting the appropriate sanction from the wide range of available sanctions, the trial court should review several factors. It should consider

> (1) whether the violation was willful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice. [*Id.* at 32-33.]

The sanction selected by the trial court must be proportionate and just in light of the violation at issue. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 662; 819 NW2d 28 (2011). Our Supreme Court and this Court have repeatedly warned that, out of all the sanctions in the trial court's arsenal, dismissal is the most drastic sanction and should be applied sparingly and only to the most egregious and extreme cases. *MacArthur Patton*, 403 Mich at 477 (recognizing that trial courts have the authority "to take the most drastic step of dismissal" to enforce their orders, but warning that courts must exercise that authority "cautiously"); *Brenner*, 226 Mich App at 163 (stating that dismissal should be used as a sanction only for the most egregious misconduct); *Thorne v Bell*, 206 Mich App 625, 633; 522 NW2d 711 (1994) (stating that trial courts must evaluate all their options before resorting to the most drastic sanction); *Dean*, 182 Mich App at 32-33 (characterizing dismissal as a harsh sanction and warning that courts should not elevate the application of the rules of practice to a "fetish" so as to prevent justice from being done in the particular case). Trial courts must have the ability to employ the harshest sanction in appropriate cases to deter those who might be tempted to engage in improper conduct in the absence of such a deterrent, but courts must weigh the use of such a sanction in a particular case against the public policy favoring the resolution of disputes on the merits. *North v Dep't of Mental Health*, 427 Mich 659, 661-662; 397 NW2d 793 (1990).

In this case, it is clear from the record that discovery progressed slowly and was often quite contentious. Blackburn's counsel, John Tallman, plainly took a relaxed view of the deadlines provided by the court rules for discovery requests. But Tallman presented evidence that defendants' lawyers were also untimely with regard to discovery requests. Tallman had to file motions to compel discovery, and the trial court entered orders to enforce his discovery requests. There were also indications that depositions were particularly contentious and involved unprofessional behaviors by lawyers on both sides. Nevertheless, discovery did progress and, in some cases, the parties were able to resolve their discovery disputes by stipulation. Moreover, the record suggests that much of the delay involved difficulties related to the busy trial schedules of the lawyers involved in this litigation. Indeed, the attorneys for defendants specifically cited the complex nature of the case, the amount of discovery that had been done, and their busy trial schedules in support of their motions to extend discovery and adjourn the trial deadlines. It was in this context that the parties stipulated to the entry of an order on November 25, 2014, extending discovery to February 27, 2015, and setting the procedures for finalizing the remaining expert depositions over the weeks remaining for discovery.

The November 25, 2014 stipulated order provided, in relevant part, that "all parties will provide dates for the depositions of their respective experts in the following manner:

- Plaintiff's counsel will provide dates for Plaintiff's experts on or before 12/12/2014.

- Defendants' respective counsel will provide dates for their experts on or before 12/31/2014.

- Plaintiff's experts will be deposed prior to the deposition of the corresponding defense expert.

The stipulated order gave Tallman approximately two weeks to speak with his experts and find depositions dates that would fit their schedules. The order was also notable for what it did not require. Unlike a previous order, which provided that certain depositions must be completed by a fixed date, this order did not require the parties to complete the depositions by a particular date. The order only required Tallman to provide "dates" for his experts' depositions on or before December 12, 2014. The order did not even require the parties to fix the dates by that time. Nothing within the order precluded the parties from negotiating a different date after Tallman provided his initial dates, and the order did not address cancellations. Hence, Tallman could comply with the plain language of the order by providing dates for the deposition of his expert witnesses without regard to whether the parties agreed to use or actually used those dates. See *Silbertstein*, 278 Mich App at 460.

The trial court determined that Tallman willfully violated the order by failing to give any dates for three of his four expert witnesses. The trial court then twice determined that Tallman's failure to comply with the order warranted striking all three witnesses, which had the effect of dismissing his case. See *Dean*, 182 Mich App at 31-32 (explaining that barring an expert witness who is essential to a case from testifying should be treated as a dismissal), citing *Middleton v Margulis*, 162 Mich App 218, 222-223; 412 NW2d 268 (1987). That is, the trial court felt that Tallman's failure amounted to misconduct that warranted dismissing his client's case. However, it does not appear that Tallman actually violated the order with regard to all three experts.

It is undisputed that Tallman provided dates for the deposition of his expert emergency room physician, Tim Osbon, M.D., by e-mail on December 8, 2014. He also provided a date for Weinberger's deposition on December 9, 2014. By providing "dates" for these experts, Tallman complied with the minimum requirements of the stipulated order. Nevertheless, the trial court found that Tallman withdrew the date for Weinberger and did not timely provide a different date, which—in its view—amounted to a violation of the order with regard to Weinberger. In reaching this conclusion, the trial court relied on subsequent e-mails that Tallman sent to opposing counsel.

An e-mail shows that counsel for Fabi and Bronson confirmed the date provided by Tallman a few hours after Tallman provided it. However, on December 10, 2014, Tallman e-mailed Fabi and Bronson's counsel and stated:

After providing the date of January 16, 2015, for the deposition of Dr. Weinberger, I realized that I have a trial that begins February 16, 2015, and that discovery in Blackburn must be completed by the end of February.

I do not wish to depose Defendants' experts on the eve of trial in a different case. It may be possible to depose Dr. Weinberger on a Monday morning and move things more quickly. What is your availability?

Contrary to the trial court's impression, at no point within this e-mail did Tallman formally withdraw the date he earlier provided. He did not write that he did not wish to depose Weinberger on the proposed date; he stated that he did not wish to depose the *defense experts* on the eve of trial and expressed a preference for conducting the deposition of Weinberger *earlier* than he had previously stated in order to "move things more quickly." He then wrote that it "may be possible" to schedule Weinberger's deposition on a Monday. The reference to Monday must—when considered in the context that he wanted to expedite the deposition—have referred to a Monday before January 16, 2015. Stated another way, he impliedly suggested additional earlier dates and inquired about the availability of counsel for Fabi and Bronson on those earlier dates. Although the e-mail might have been more clearly stated, it does not on the surface appear that Tallman was engaging in gamesmanship or otherwise trying to circumvent the stipulated order. Given the evidence, the trial court clearly erred to the extent that it found that Tallman failed to provide a date for Weinberger's deposition before the deadline and clearly erred to the extent that it found that he formally withdrew the original date in his e-mail of December 10, 2014. See *Loutts*, 298 Mich App at 26.

The exchange of e-mails suggested that counsel for Fabi and Bronson might have deliberately exploited the ambiguity in Tallman's e-mail. If counsel for Fabi and Bronson had understood that Tallman had withdrawn the date, he could have responded and informed Tallman of his understanding. Had he wished to hold Tallman to his original date, he also could have notified Tallman of that fact. But he apparently chose not to respond until December 15, 2014, which was after the deadline. Additionally, counsel for Fabi and Bronson later notified Tallman that he accepted a deposition date for Weinberger on January 12, 2015, which was earlier than previously provided. Thus counsel for Fabi and Bronson proceeded as though he agreed with the changes only to later move to strike Blackburn's witnesses and seek the dismissal of his case. Accordingly, even to the extent that the trial court correctly noted that Tallman did not comply with the spirit of the stipulated order—as opposed to its actual requirements—with regard to Weinberger, there were equities that tended to mitigate Tallman's culpability. See *Dean*, 182 Mich App 32 (instructing the trial court to consider the nature of the violation and determine its willfulness).

Although the evidence showed that Tallman complied with the stipulated order with regard to Osbon and Weinberger, that fact does not automatically preclude the trial court from striking Weinberger as a witness. It was undisputed that Tallman did not provide any dates for his two damages experts, Ancell and Paranjpe. Consequently, it was undisputed that he did in fact violate the stipulated order to the extent that he intended to use those experts. And, contrary to Blackburn's contention on appeal, the trial court could in theory sanction him for Tallman's failure to adhere to the order with regard to those witnesses by fashioning a sanction that went

beyond striking just those witnesses. See MCR 2.313(B)(2); *Dean*, 182 Mich App at 32 (stating that the trial court has the authority to determine a sanction that is just and proper).

It is, however, clear from the record that the trial court intended to strike only those witnesses for whom Tallman did not provide a deposition date. Accordingly, the trial court's error involving whether Tallman provided a deposition date for Weinberger cannot be said to be harmless. See MCR 2.613. Had the trial court determined that Tallman provided a timely date for Weinberger's deposition and refused to strike him as an expert on that basis, there would plainly be no grounds for granting the motion for summary disposition—at least as framed by the defendants. As such, the trial court abused its discretion by grounding its decision in significant part on a clearly erroneous factual finding. See *Dean*, 182 Mich App 31-32. Moreover, even if Tallman had not provided a timely date for Weinberger's deposition, that failure would not warrant the extreme sanction of striking Weinberger as a witnesses and dismissing Blackburn's case.

In assessing whether to impose a sanction, the trial court cited *Dean* and recognized that it had the authority to impose a range of sanctions. It then analyzed some of the factors suggested in *Dean*. It first examined Tallman's degree of compliance and whether he willfully violated the stipulated order. The court determined that Tallman violated the order with regard to three of his four remaining experts and that his violations were willful.

As explained, the trial court clearly erred when it found that it was "not . . . plausible" that Tallman's e-mail was a "suggestion" that they change Weinberger's deposition date. The e-mail purporting to withdraw the date cannot be read to include a formal withdrawal, and Tallman provided a date for Weinberger's deposition within the time limit, which minimally complied with the order. The trial court did not clearly err, however, when it found that Tallman did not inadvertently or accidentally fail to provide dates for the remaining experts. Indeed, Blackburn conceded that Tallman did not timely propose dates for Ancell and Paranjpe. Tallman later informed the trial court that he had decided not to use Paranjpe as his expert, but that did not negate the fact that he failed to provide dates for the depositions of Paranjpe and Ancell within the deadline. As such, the failure to do so cannot be said to be accidental or inadvertent. See *Welch v J Walter Thompson, USA, Inc*, 187 Mich App 49, 52; 466 NW2d 319 (1991) (stating that, to be willful, a discovery violation need not be accompanied by wrongful intent; it need only be conscious or intentional). Tallman essentially conceded that he intentionally did not give dates for those witnesses, but proffered several excuses for not doing so. In any event, merely missing the deadline by itself did not warrant the imposition of the most severe sanction. See *Dean*, 182 Mich App at 32.

Turning to the next factor, the trial court disregarded Tallman's efforts to cure his failure to comply. Tallman cooperated with counsel for Fabi and Bronson to schedule a deposition for Weinberger after counsel for Fabi and Bronson finally informed Tallman that he interpreted Tallman's earlier e-mail as a withdrawal of the previously agreed-upon date. Tallman worked with defense counsel and set a deposition date for Weinberger that was earlier than previously agreed. Even if one were to conclude that Tallman did not comply with the spirit of the order by suggesting a change in the earlier proposed deposition date for Weinberger, Tallman worked in good faith to set a revised date.

Tallman similarly worked to cure any defect with regard to Ancell. He e-mailed defense counsel on December 17, 2014, and proposed that Ancell be deposed on January 20, 2015. To be sure, Tallman's e-mail was five days after the deadline set in the stipulated order, but those five days included a weekend. Additionally, it was only approximately three weeks from the date the trial court entered the stipulated order. Given the problems with earlier depositions involving defense witnesses, it appears that Tallman's effort to belatedly comply with the order should have been weighed as a mitigating factor against dismissing Blackburn's case. See *Dean*, 182 Mich App at 33 (stating that the trial court should consider the efforts taken to cure noncompliance). Yet the trial court took no consideration of Tallman's efforts and ignored the evidence that the parties actually agreed to a date for Ancell's deposition that left plenty of time remaining within the period set for discovery. Instead, the trial court fixated on the fact that Tallman never provided any date for Paranjpe and only filed a motion to substitute another expert after defendants filed their motion to strike. On that basis, it disregarded Tallman's efforts to cure as "disingenuous."

The trial court also clearly erred to the extent that it found that Tallman's tardiness prejudiced defendants. See *Loutts*, 298 Mich App at 26. The trial court noted, in general, that the "continuous failure to timely provide necessary discovery information delays a defendant's ability to adequately prepare for the depositions and affects the defendant's ability to timely analyze plaintiff's claims and mount a proper defense." The court then specifically found that, "[b]ecause Plaintiff did not provide the majority of the dates by the deadline, Defense had significantly less time to coordinate their own expert's dates." The trial court did not explain how defendants' loss of a few days of notice so thoroughly disrupted their ability to coordinate dates with their own experts that it prejudiced the defense. Indeed, the fact that the parties were able to agree to deposition dates in January for three of Blackburn's experts suggests that any prejudice caused by the violations was minimal. Moreover, Blackburn had relied on Weinberger's opinion since the inception of the case—he was one of the expert affiants used in Blackburn's affidavits of merit—and defendants knew that he was a listed expert. As such, they had ample opportunity to discover his opinions before his deposition and to consult with their own experts about his opinions even before his deposition. Given the facts, it is difficult to see how Tallman's purported failure to more timely provide a deposition date for Weinberger prejudiced defendants. See *Dean*, 182 Mich App at 33.

Even if it had prejudiced the defendants' ability to prepare their own experts for deposition, the alleged harm suggests remedies far short of dismissal. The trial court could have extended discovery for the defense; it could have ordered Tallman to compensate defendants for the costs associated with the delays; or, if it felt the violation were extreme enough, it could have precluded Blackburn from deposing the defense expert corresponding to the plaintiff's expert whose deposition date was untimely. See MCR 2.313(B)(2); *MacArthur Patton*, 403 Mich at 478 (listing sanctions that would have been more proportionate to the violation than dismissal under the circumstances). The trial court, however, concluded that the prejudice—to the extent that there could be said to have been any prejudice—weighed in favor of the most extreme sanction available to the court.

Finally, the trial court appeared to give the most significant weight to the factor involving Tallman's history of complying with discovery requests. In assessing this factor, the trial court conceded that all the parties had a history of "uncooperative discovery practices," but it

-7-

characterized Tallman's actions and "lack of cooperation" as "troubling from the beginning of the case." It noted that defendants had to file motions to compel discovery and had to move to adjourn the case as a result of Tallman's actions. It also listed Tallman's late filed answers to discovery. The trial court, however, did not acknowledge that—even though defendants moved to compel discovery—it did not have to order Tallman to comply with discovery. It did not have to do so because Tallman complied—albeit belatedly—to the contested matters of discovery. By contrast, the court actually had to order defendants to comply with discovery requests. Similarly, Tallman presented evidence that defendants' responses to discovery requests were also untimely.

Interestingly, the trial court attributed the need for adjournments to Tallman's dilatory discovery practices, but defendants themselves did not make that representation to the court when they asked for adjournments. Rather, they asserted that the adjournments were needed because of the complexity of the case and to avoid conflicts in their trial schedules. They even claimed that discovery had progressed reasonably well. This Court has recognized in a different context that parties should generally not be permitted to prevail in one phase of the litigation by asserting a particular argument, only to assert a contrary argument in order to prevail during a later phase. See *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479-480; 822 NW2d 239 (2012) (discussing the doctrine of judicial estoppel). Consequently, when viewed in the context of the entire procedural history, Tallman's history of untimeliness was not so pervasive and egregious, and did not occur over such an extended period of time, that it would warrant dismissing his client's case as a result of a partial failure to comply with the deadline for providing deposition dates.

The more serious matter cited by the trial court was Tallman's representation that he was unaware that defendants wanted to depose his economic experts. The record showed that defendants had noticed Ancell and Paranjpe for depositions earlier in the litigation and that Tallman apparently canceled the depositions. Thereafter, defendants requested dates for the deposition of those experts. Accordingly, the trial court did not clearly err when it found that Tallman actually knew that defendants wanted to depose those experts. See *Loutts*, 298 Mich App at 26. This misrepresentation militated in favor of imposing a greater sanction. See *Dean*, 182 Mich App at 32-33. It may even have warranted resort to the trial court's contempt power. See MCR 2.313(B)(2)(d); *MacArthur Patton*, 403 Mich at 478 (stating that the trial court could have sanctioned the party's attorney directly rather than dismiss the case). It did not, however, alter the balance of the scales so much that the trial court could reasonably resort to the most extreme sanction in its arsenal. Such a response was disproportionate to the violation and the harm occasioned by the violation. See *Hardrick*, 294 Mich App at 662 (providing that the sanction selected must be proportionate to the violation and just under the circumstances).

Although consideration of the *Dean* factors largely weighed in favor of a lesser sanction, the trial court determined that it had to dismiss Blackburn's case because anything less than dismissal would have "encourage[d] similar behavior going forward." More specifically, the trial court stated that it took into account Tallman's "cavalier attitude toward the bench, and his lack of respect" for the discovery process, for deadlines, and for opposing counsel. Being familiar with the parties and having presided over the hearings, the trial court was in a better position to assess whether Tallman was engaged in gamesmanship and failed to behave with proper respect for the court, opposing counsel, and the judicial process. See MCR 2.613(C). Nevertheless, the record shows that counsel for all parties were untimely and failed to fully and

fairly comply with the discovery process at various points. Yet the trial court excused defendants' behaviors when weighing the factors and weighed Tallman's behaviors against his client when considering whether Tallman's partial failure to comply with a single order late in discovery warranted dismissing Blackburn's claims. The record does not support the trial court's conclusion that it had to use the most powerful weapon in its arsenal to respond to Tallman's partial failure to comply with a stipulated order for discovery. Under these facts, the trial court's interest in deterring future misconduct by the same lawyer did not override the policy in favor of deciding claims on the merits. See *North*, 427 Mich at 662.

Tallman did not engage in the kind of conduct that has been found to warrant dismissal. Tallman did not repeatedly violate orders over a significant period of time, even after being warned of the consequences. See, e.g., *Krim v Osborne*, 20 Mich App 241-242; 173 NW2d 737 (1969) (holding that dismissal was not an abuse of discretion where the plaintiff failed to comply with discovery requests and orders over a period two years). Rather, his partial failure to comply was his first failure to comply with a court order. This case also did not involve the kind of egregious conduct that threatened to undermine the integrity of the judicial process itself. See *Maldonado*, 476 Mich 394-398 (noting that the plaintiff and her counsel repeatedly disregarded an order, even after being warned about continued misconduct, and stating that the misconduct was directed at frustrating the due administration of justice). Rather, this case involved a relatively minor violation that delayed discovery by a few days. And, if the violation occasioned any prejudice at all, it could have been rectified with one of the lesser sanctions already discussed. See MCR 2.313(B)(2); *MacArthur Potter*, 403 Mich at 477-478. Without Weinberger, Blackburn certainly could not establish his claim against Fabi and Bronson and the trial court ultimately determined that it had to dismiss his case against all defendants. Tallman's partial failure to comply with the order—even when considered with his past conduct—was not so prejudicial or egregious that the court could reasonably apply that sanction. The trial court had an array of lesser sanctions at its disposal that would have been more appropriate. See *Dean*, 182 Mich App at 32-33. Therefore, to the extent that the trial court determined that Tallman's partial failure to comply with the stipulated order warranted striking Weinberger as an expert witness, its decision fell outside the range of reasonable and principled outcomes. See *Loutts*, 298 Mich App at 26.

## II. SANCTIONS UNDER MCR 2.114(E)

### A. STANDARD OF REVIEW

On cross-appeal, Fabi and Bronson argue that the trial court erred when it sanctioned them for filing a proposed order dismissing Blackburn's claims under MCR 2.602(B)(3) after the trial court elected to again strike Blackburn's expert witnesses. This Court reviews de novo whether the trial court properly interpreted and applied the court rules. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015). This Court reviews the trial court's factual findings underlying its application of the court rules for clear error. *Id*. This Court reviews for an abuse of discretion the trial court's selection of an appropriate sanction under the authority of the court rules. *Id*.

### B. ANALYSIS

-9-

As this Court has explained, under certain circumstances, a trial court must sanction an attorney for signing a document presented to the court:

> Whenever an attorney or party signs a motion, that person's signature constitutes "certification" that he or she has "read the document" and, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and that the motion was not made for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 2.114(D). If a party brings a motion that has been signed in violation of MCR 2.114(D), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ." MCR 2.114(E). The trial court may not assess punitive damages, but may order the person who signed it or a represented party to pay "the other party or parties the amount of the reasonable expenses incurred because of the filing . . . ." MCR 2.114(E). Because MCR 2.114(E) only requires the trial court to impose an appropriate sanction, which may include an order to pay reasonable attorney fees, the trial court has the discretion to tailor its sanction to the circumstances. See *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 726-727; 591 NW2d 676 (1998). [*Kaeb*, 309 Mich App at 565-566.]

After the trial court upheld its decision to strike Blackburn's expert witnesses, Fabi and Bronson submitted a proposed order dismissing Blackburn's claims with prejudice for the reasons set forth in defendants' previous motion for summary disposition. They submitted the order under MCR 2.602(B)(3).

MCR 2.602(B) provides the procedures for entering judgments or orders after the trial court had made its decision on the record. That rule states that a judgment or order must be entered in one of four ways:

> (1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.

> (2) The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision.

> (3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the original of the proposed judgment or order and proof of its service on the other parties.

-10-

(a) If no written objections are filed within 7 days, the clerk shall submit the judgment or order to the court, and the court shall then sign it if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.

(b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.

(c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

(4) A party may prepare a proposed judgment or order and notice it for settlement before the court. [MCR 2.602(B).]

As can be seen, the rule contemplates that a proposed order accurately reflects the trial court's actual ruling on a contested matter. The trial court, for example, may sign a "judgment or order" at the time the court "grants" the relief provided in the judgment or order—that is, the court may sign an order that accurately reflects the relief it just granted. MCR 2.602(B)(1). Further, the court must sign an order approved by all the parties if the order "comports with the court's decision." MCR 2.602(B)(2). Likewise, a proposed order submitted under MCR 2.602(B)(3) is subject to objections for "accuracy or completeness" and the court should only sign the order if it "comports with the court's decision." The common thread between these provisions is that the order or judgment must completely and accurately reflect the trial court's actual grant of relief.

When counsel for Fabi and Bronson signed the proposed order and submitted it under MCR 2.602(B)(3), counsel certified that he or she read the proposed order; that to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the proposed order was well grounded in fact and law; and that he or she was not interposing it for any improper purpose. MCR 2.114(D). As already discussed, the law requires that the order accurately and completely reflect the relief granted by the trial court. A proposed order submitted under MCR 2.602(B)(3) will be well grounded in fact only if the signing party has a belief—formed after reasonable inquiry—that the order accurately and completely reflects the relief granted by the trial court.

Here, the trial court already entered an order granting the relief that the trial court intended to grant—it sanctioned Blackburn by striking the three experts. Counsel for Fabi and Bronson then proposed an order that provided them with additional relief beyond that which the trial court had granted; they apparently did so on the assumption that the trial court intended to grant them that additional relief or would likely grant them the additional relief at some point. The trial court, however, gave no indication in its order sanctioning Blackburn that it also intended to dismiss his claims at that time. As such, the proposed order was not well grounded in fact or law, which violated MCR 2.114(D). Therefore, the trial court had to order a sanction

-11-

under MCR 2.114(E), and Fabi and Bronson do not challenge the trial court's exercise of discretion in selecting an appropriate sanction.

The trial court did not clearly err when it found that counsel for Fabi and Bronson did not have a belief formed after reasonable inquiry that the proposed order accurately and completely reflected the relief granted by the trial court as required under MCR 2.602(B). Consequently, it did not err when it determined that counsel submitted the proposed order in violation of MCR 2.114(D)(2) and that the violation warranted a sanction under MCR 2.114(E).

## III. CONCLUSION

For the reasons stated above, we reverse the trial court's decision to strike all three experts and vacate its order to that effect. Because the trial court granted summary disposition on the ground that Blackburn could not establish an essential element of his claims against defendants without the testimony of Weinberger, we also vacate the trial court's order granting summary disposition in favor of defendants. We remand this case to the trial court for further proceedings consistent with this opinion. On remand, the trial court may consider—but is not required to consider—whether a lesser sanction might be warranted for the violation of the discovery order at issue in this appeal. In all other respects, we affirm.

Reversed in part, vacated in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Blackburn may tax his costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

-12-