*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS LOGISTICS, INC.,

      Plaintiff-Appellant,

UNPUBLISHED
March 23, 2023

v

No. 359793
Oakland Circuit Court
LC No. 2020-182791-CB

SARGENT APPLIANCE SALES AND SERVICE, INC.,

      Defendant-Appellee.

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this action arising from a contractual dispute between the parties, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant. We affirm.

## I. BACKGROUND

This case arises out of a dispute between plaintiff and defendant over the terms of an oral contract that once existed between the parties. In 2014, plaintiff and defendant entered into an open-ended agreement in which plaintiff agreed to provide delivery and installation services for defendant, a company that sells home appliances. In exchange, defendant agreed to pay plaintiff on a per-delivery basis. The parties worked together with no notable issues for several years, and renegotiated the terms of their agreement once in mid-2019. At that point, plaintiff's owner, Nicholas De Smet, and defendant's part-owner and president, John Skolas, discussed new delivery prices and the prospect of a written contract. In an e-mail to defendant's part-owner and president, John Skolas, plaintiff's owner, Nicholas De Smet, laid out new prices for particular deliveries and services, and stated that he wanted to enter into a written contract for a set duration of 12 to 24 months. A written contract was never signed, but the parties operated under the terms contained in the e-mail following the negotiations.

Plaintiff and defendant continued their business arrangement until early 2020, when the COVID-19 pandemic led to a statewide emergency shutdown per the Governor's Executive Order No. 2020-59. Under the order, only a select group of first-responders and essential workers were permitted to continue normal work operations, while everyone else in the state was ordered to stay

at home. Skolas sent an e-mail to De Smet on March 29, 2020, stating that pursuant to the executive order, all delivered appliances were to be left in the garage or at the front door of customer's homes, and advising plaintiff that there would be no in-home installations. Plaintiff's employees adhered to those rules during the first few weeks following the shutdown, but on April 24, 2020, Skolas sent a text message to De Smet stating that in-home installations would resume the following week. De Smet disagreed with this decision and refused to allow plaintiff's employees to provide in-home installations until the order was lifted. As a result, Skolas immediately terminated defendant's agreement with plaintiff. Skolas then replaced plaintiff with a new trucking company.

Plaintiff thereafter filed a complaint alleging promissory estoppel, breach of contract, and breach of implied contract, and requested a declaratory judgment regarding the parties' obligations under the agreement. In lieu of filing an answer, defendant moved for summary disposition on all of plaintiff's claims pursuant to MCR 2.116(C)(7) (claim barred by operation of law), (8) (failure to state a claim), and (10) (no genuine issue of material fact). Plaintiff filed a response to the motion, then filed a first amended complaint before defendant's summary disposition motion was decided, rendering the first summary disposition motion moot.

Defendant later renewed its motion for summary disposition. A hearing was not held on the motion, and approximately six months after it was filed, the trial court granted summary disposition in favor of defendant, stating that it was granting the motion pursuant to MCR 2.116(C)(8) only. Plaintiff then filed a motion for reconsideration of the trial court's order granting summary disposition. Plaintiff contended that deposition testimony from Skolas, submitted for the first time with the motion for reconsideration, provided evidence that there were genuine issues of material fact on each of plaintiff's claims and that summary disposition was thus improperly granted. The trial court denied plaintiff's motion for reconsideration without providing any substantive explanation for doing so. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition to defendant under MCR 2.116(C)(8) and MCR 2.116(C)(10). We disagree.

We review de novo a trial court's grant of summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10); on appeal, plaintiff challenges the trial court's ruling under MCR 2.116(C)(8) and (C)(10). We note that although the trial court stated that it granted summary disposition to defendant pursuant to MCR 2.116(C)(8), the parties clearly relied on evidence outside the pleadings, and the language used in the order granting summary disposition suggests that the trial court considered matters outside the pleadings in ruling on the motion. That being the case, it is appropriate to analyze plaintiff's claims under MCR 2.116(C)(10), rather than (C)(8). See *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008) (stating that "[w]here a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review.").

-2-

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 160. When evaluating a (C)(10) motion, the trial court must consider all of the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties" in the light most favorable to the nonmovant. *Estate of Trueblood v P & G Apartments, LLC*, 327 Mich App 275, 284; 933 NW2d 732 (2019) (citation omitted). If the evidence does not establish that a genuine issue of material fact exists, then the moving party is entitled to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when, after viewing the evidence in the light most favorable to the nonmoving party, reasonable minds could differ on the issue." *Id*.

## A. PROMISSORY ESTOPPEL

The elements of promissory estoppel are "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, Inc*, 330 Mich App 679, 713; 950 NW2d 502 (2019) (quotation marks and citation omitted). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) (quotation marks and citation omitted). "In determining whether a requisite promise existed, we are to objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999). A court must "exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted." *Id*.

Plaintiff contends that an agreement existed between the parties, and that plaintiff had the right to rely on it. Under that agreement, which began in 2014, plaintiff made deliveries for defendant for a set price. There was no agreed-upon end date, but the arrangement was subject to renewal at the end of each calendar year and could be terminated for cause. According to plaintiff, termination of the agreement required six months' advanced notice.

Plaintiff primarily relies on *State Bank of Standish v Curry*, 442 Mich 76; 500 NW2d 104 (1993). The defendants in *State Bank* were dairy farmers who annually obtained an operating loan from the plaintiff bank, in order to finance the farm's operations. *Id*. at 79. In the mid-1980s, the federal government initiated a buyout program for dairy businesses. The defendants expressed interest in selling their dairy business. *Id*. at 80. The defendants went to the bank to discuss the buyout program and received explicit assurances that the bank would offer them an operating loan the following spring if they ended up deciding not to sell the business. *Id*. Believing that they would be able to get another loan to keep the business going, the defendants chose not to take the federal buyout. *Id*. at 80-81. The following year, the bank denied the defendants' application for a new operating loan. *Id*. at 81. After the bank filed suit for claim and delivery, the defendants brought a counterclaim of promissory estoppel stemming from the broken promise to renew the loan. *Id*. at 81-82. To support their claim, defendants relied both on the course of dealing between the parties and the statements made by the bank officers that the bank would renew the loan. *Id*. at 82-83. The jury returned a verdict in favor of the defendants on that claim. *Id*. Our Supreme

Court agreed, reasoning that the defendants presented sufficient evidence that the bank had promised them that it would renew the loan. *Id*. at 92.

The key piece of evidence supporting the promissory estoppel claim in *State Bank* was that the bank made explicit assurances about renewing the defendants' loan the following year. There is no evidence in this case that defendant made the same kind of specific promise to plaintiff. In an affidavit, De Smet stated that he did not scale back plaintiff's delivery capacity or lay off employees because he expected that deliveries would continue as usual after the stay-home order was lifted. De Smet further stated that Skolas told him that defendant would need six months to replace plaintiff's services if the agreement ended, but not that there was a promise that defendant would give six months' notice to plaintiff before terminating the agreement. But this evidence fails to show the existence of a specific promise made by defendant to induce plaintiff's actions or expectations. Plaintiff's sole reliance on the parties' past course of dealing is not enough to show that defendant promised to adhere to the agreement with plaintiff in the future. To successfully present a claim of promissory estoppel, plaintiff must show that the alleged promise was "definite and clear, and the reliance on it must be reasonable." *Zaremba*, 280 Mich App at 41. A course of dealing, absent any affirmative assurances made by defendant, does not meet that standard. Under these circumstances, the trial court did not err by granting summary disposition in favor of defendant on plaintiff's claim of promissory estoppel.

## B. BREACH OF CONTRACT

To set forth a prima facie showing of breach of contract, the party asserting the breach must show by a preponderance of the evidence that (1) a contract existed, (2) the other party breached the contract, and (3) the party asserting the breach incurred damages as a result of the breach. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement and (5) mutuality of obligation." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 101; 878 NW2d 816 (2016).

Regarding the first element of a contract, there is no dispute that the parties were competent to contract. Regarding the second and third elements—proper subject matter and legal consideration—plaintiff argues that defendant terminated the contract on the basis of plaintiff's refusal to violate EO 2020-59, which was in effect on April 24, 2020, when Skolas informed De Smet that in-home installations would resume regardless of the ongoing pandemic. This raises the question of whether the subject matter of the contract was proper and the consideration was legal. It is well-settled "that contracts that require performance of an act in violation of public policy (as announced by the Legislature or, at times, the executive) cannot be enforced by the courts." *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, 337 Mich App 529, 541; 976 NW2d 674 (2021). "If any part of such consideration is illegal, the entire consideration is void." *Kukla v Perry*, 361 Mich 311, 323; 105 NW2d 176 (1960).

Under EO 2020-59, all Michigan residents were ordered to stay in their homes unless there was a specific and unavoidable reason to leave, such as to secure food, gasoline, medical supplies, or "any other products necessary to maintain the safety, sanitation, and basic operation of their residences and motor vehicles." EO 2020-59, § 7(a)(7)(A). Business owners were generally not permitted to maintain normal operations requiring workers to leave their homes "except to the

extent that those workers are necessary to sustain or protect life, to conduct minimum basic operations, or to perform a resumed activity within the meaning of th[e] order." EO 2020-59, § 4. Under EO 2020-59, § 9(f), workers at retail stores, including home appliance retailers, were considered "critical infrastructure workers" that were not subject to the same general restrictions on travel and work listed in the rest of the order. Similarly, workers at distribution centers and service providers who were critical to the day-to-day operation of the state's supply chain were permitted to continue working in-person. EO 2020-59, § 9(b).

The exceptions to the executive order indicate that the Governor was aware that certain situations required in-person work. Under the terms of the order, defendant was allowed to staff its showroom, deliver appliances to customers, and install those appliances in customers' homes. It would make little sense for the executive order to protect a supply chain that would deliver a critical household appliance to the threshold of a home and leave people without the means to move, install, or use those items. Thus, plaintiff's contention that defendant asked it to perform an illegal act under the contract lacks merit. The subject matter of the contract was proper and the consideration was legal, satisfying those elements.

The final two elements of a contract—mutual assent and mutuality of obligation—were also satisfied here. A valid contract requires "mutual assent or a meeting of the minds on all the essential terms." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (quotation marks and citations omitted). Mutuality of obligation, on the other hand, "simply means that both parties are bound to an agreement or neither is bound." *Bancorp Group, Inc v Mich Conference of Teamsters Welfare*, 231 Mich App 163, 171; 585 NW2d 777 (1998).

Skolas admitted that the parties had an agreement, which began in 2014. Plaintiff delivered appliances for defendant based on an agreed-upon price schedule, which was renegotiated in 2019. The record indicates that the parties adhered to the new price scheme until Skolas terminated the agreement in 2020. The parties' conduct confirms that there was a meeting of the minds on the agreement's essential terms, including the bargained-for exchange of money for services. Thus, plaintiff can satisfy the elements of mutuality of agreement and mutuality of obligation, and as a result, all five elements necessary to show that a valid contract existed have been satisfied.

The parties disagree about the terms of the contract, however, particularly when it comes to the duration of the contract and the conditions required for termination. As to the contract's duration, plaintiff contends that the contract lasted at least one calendar year and was subject to annual renewal. Defendant argues that it purposely never entered into a written contract to ensure it could terminate the agreement at any time. Viewing the evidence objectively, we find that the contract was for an indefinite duration. Although plaintiff argues that the contract was renewed annually, there is no evidence of that actually being the case. The parties simply carried on with their course of dealing and occasionally renegotiated prices, with no formal contract renewal process or documentation suggesting that the agreement would expire after a specific amount of time. Thus, there is no genuine issue of material fact that the contract was for an indefinite duration.

As for whether notice was required prior to termination, plaintiff asserts the parties were obligated to continue performing under the contract for six months after defendant notified plaintiff of the intent to terminate their agreement. However, all plaintiff has to show in support of that is De Smet's affidavit. In the affidavit, De Smet states that Skolas told him that it would take six months to secure a replacement for plaintiff's services if the contract ended. But De Smet's assertion was not that either party was contractually obligated to give the other six months' notice before terminating the delivery agreement. Furthermore, there is no other record evidence to support the claim that notice was required before termination. A contract that "fails to provide for the term, duration, or manner of termination is terminable at the will of either party." *Lichnovsky v Ziebart Int'l Corp*, 414 Mich 228, 242; 324 NW2d 732 (1982). Absent contractual terms on either the duration or method of termination, there is no genuine issue of material fact that the contract was terminable at the will of either party. Therefore, plaintiff has not shown that defendant breached a contractual duty by terminating the contract without notice. The trial court thus did not err when it granted summary disposition in favor of defendant on plaintiff's breach-of-contract claim.

## C. BREACH OF IMPLIED CONTRACT

Plaintiff also brings a claim of breach of implied contract on appeal. A plaintiff does not need to "elect to proceed under one theory or the other, but could seek recovery on the basis either of an express verbal contract, or an implied contract if the [trier of fact] found that the express verbal contract did not exist." *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 574; 595 NW2d 176 (1999) (quotation marks and citation omitted). As previously discussed, there is no genuine issue of material fact that there *was* a valid contract between the parties. "An implied contract cannot be enforced where the parties have made an express contract covering the same subject matter." *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 93; 468 NW2d 845 (1991). Accordingly, plaintiff cannot sustain a claim for breach of implied contract.

## D. DECLARATORY RELIEF

Plaintiff's final claim is that the trial court erred when it granted summary disposition in favor of defendant on plaintiff's claim for declaratory relief. We conclude that plaintiff cannot succeed on a claim for declaratory relief here. MCR 2.605(A)(1) provides:

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

"An actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011). "[D]eclaratory relief is designed to give litigants access to courts to *preliminarily* determine their rights." *Detroit v Michigan*, 262 Mich App 542, 550-551; 686 NW2d 514 (2004) (emphasis added). Absent an actual controversy, a court lacks subject-matter jurisdiction to provide declaratory relief. *Lansing Sch Ed Ass'n*, 293 Mich App at 515.

By the time the trial court granted summary disposition, over 18 months had passed since the alleged breach of contract occurred. Plaintiff is not alleging that an imminent injury is likely to occur here; rather, plaintiff's claims for damages are based on alleged contractual violations that have already occurred. There were no rights remaining here that needed to be preliminarily determined to guide future conduct, and declaratory relief is not appropriate where a plaintiff is seeking relief from a past injury. *Lansing Sch Ed Ass'n*, 293 Mich App at 516. Moreover, plaintiff has not brought forth any evidence to show a present controversy for which declaratory relief would be appropriate. Accordingly, the trial court did not abuse its discretion when it granted summary disposition in favor of defendant on plaintiff's claim for declaratory relief.

## III. CONCLUSION

The trial court properly granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(10).

Affirmed.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan