*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELA MCCAULEY,

        Plaintiff-Appellant,

and

AMERICAN SPECIALTY PHARMACY
CAREPLUS, LLC, d/b/a ASP CARES,,

        Intervening Plaintiff,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
July 20, 2023

No. 361847
Wayne Circuit Court
LC No. 21-004859-NF

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

In this action for personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, Angela McCauley appeals as of right the order granting Progressive Marathon Insurance Company's motion for summary disposition pursuant to MCR 2.116(C)(10). We find that there is a genuine issue of material fact whether there was a material misrepresentation regarding the "garaging" of McCauley's vehicle and whether she was an innocent third party. We further conclude that the trial court abused its discretion in granting rescission of the policy *ab initio*. We reverse and remand the case for proceedings consistent with this opinion.

-1-

## I. BACKGROUND

On or about March 25, 2020, McCauley's brother, Willis,[1] applied for an automobile policy of insurance with Progressive by filling out an application on his phone.[2] Willis identified three vehicles in the application: a 2019 Dodge Ram owned by Willis, a 2008 Dodge Nitro owned by McCauley, and a 1999 Jeep Cherokee. Willis indicated that all three vehicles would be garaged at his Redford home. Both McCauley and Willis are named insureds on the Progressive policy.

On or about January 8, 2021, McCauley was operating her 2008 Dodge Nitro when her vehicle was rear-ended. It is undisputed that McCauley did not cause or contribute to the accident. Following the accident, McCauley submitted a claim for PIP benefits to Progressive. Progressive sent a reservation of rights letter asserting that it had "identified an issue with the garaging address for the vehicle(s) on [the] policy" and requested that McCauley provide additional documentation. On February 22, 2021, Progressive notified Willis and McCauley that the automobile policy was "rescinded and considered null and void" effective March 25, 2020 due to a misrepresentation in the policy application. Progressive refunded the policy premium in full.

Thereafter, McCauley filed this action to recover PIP benefits.[3] During discovery, McCauley testified that she has lived with Willis at the Redford address for over six years. All her mail is delivered to the Redford address and her driver's license reflects the Redford address. She gives Willis money for utilities and other household bills. McCauley denied that she lived with her boyfriend at his Detroit home or at any other Detroit address in the last five years. But she admitted that, for approximately two years, she had been spending the night at her boyfriend's home "[m]aybe three to four times a week." When asked whether she ever spent more than three or four times a week overnight at her boyfriend's home, she responded, "No. I can't say. I don't know." She later testified:

> *Q*. Okay. And to this day, though, so since 2020, you've said that you have stayed at—in Detroit, as well, three to four days a week?
>
> *A*. It all depend [sic]. I can't put a—I can't put a date or days on how many times I see my boyfriend. I can't say that. I can't say it was two, three, four. I don't know.

McCauley does not have her own bedroom or a closet at her boyfriend's home. She keeps a change of clothes and other personal necessities "[b]etween my car and a bag." She has not paid her boyfriend rent or any utilities, and is not otherwise registered to his address.

---

[1] Because Angela and Willis share the same last name, we will refer to Willis by his first name to avoid confusion.

[2] A copy of the application is not part of the lower court record.

[3] American Specialty Pharmacy Careplus, d/b/a ASP Cares filed an intervening complaint asserting that it was entitled to payment from Progressive for medical treatment provided to McCauley for injuries she sustained in the subject accident.

McCauley testified that Willis completed the Progressive insurance application and she did not participate in the application process. She simply knew that her 2008 Nitro was to be included on the policy and that she was listed as the driver. Willis told her the amount of her monthly premium, which she paid to him each month. McCauley maintained that her vehicle was garaged at the Redford address.

Willis testified that he had lived in his Redford home for approximately 10 years and McCauley has lived with him for over six years. He stated that McCauley comes and goes as she pleases and sleeps at the Redford home "when she wishes to." She has her own bedroom, keeps clothes there, and receives mail there. Sometimes, McCauley's Nitro has been parked overnight in the garage even though she was not there. When asked to quantify the number of days per week that McCauley stayed overnight at her boyfriend's home in Detroit since 2020, Willis stated that it varied from week to week. Willis admitted that he did not inform Progressive that McCauley's vehicle may sometimes be in the city of Detroit when he applied for the policy, but he expressed uncertainty about the garaging distinction. He explained that he included McCauley's vehicle on the policy and used the Redford address because "she was staying here at the time and . . . is still staying here."

Following discovery, Progressive moved for summary disposition pursuant to MCR 2.116(C)(8) and (10) claiming it was fraudulently induced into issuing the subject insurance policy based on McCauley and Willis's material misrepresentations regarding the garaging addresses of the subject vehicle and thus was entitled to rescind the subject policy. Although it did not attach a copy of its policy, Progressive maintained that its policy "specifically prohibits garaging the vehicles at multiple addresses." Progressive asserted that it would not have issued the policy, or it would have been written at a significantly higher premium, if McCauley and Willis had disclosed the garaging addresses during the application process. Progressive argued that it was entitled to rescind the policy due to McCauley and Willis's material misrepresentations regarding the proper garaging address of their vehicles. And because ASPC's claim was derivative of McCauley's, Progressive asserted that ASPC was bound by the policy rescission. McCauley maintained that there were genuine issues of material fact whether there were misrepresentations regarding garaging of the subject vehicle and asserted that Progressive was not entitled to rescission under the facts and circumstances. The trial court granted Progressive's motion for summary disposition and found that the policy was rescinded *ab initio*.[4] McCauley now appeals.

---

[4] Although the court was not provided with a copy of the policy, the court stated during the hearing that "the policy is very specific. You have to list where the car is going to be garaged at all times." The court inappropriately used its own personal policy as a point of reference: "And if you've looked at your policies lately—and I have in mine—I mean, they're very clear about this garaging issue. . . . And then what's even clearer is, if you don't tell us, we can rescind your policy—end of story."

## II. ANALYSIS

McCauley argues that the trial court erred by granting Progressive's motion for summary disposition because there are genuine issues of material fact whether she made material misrepresentations in procuring the automobile policy. We agree.[5]

PIP benefits are mandated by Michigan's no-fault act, MCL 500.3101 *et seq*., and thus the act governs the rights and limitations of PIP coverage. *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020). "[T]he source of the right to rescind (mandatory) PIP coverage must flow from the no-fault act or the common law, not the policy terms." *Howard v LM General Ins Co*, __ Mich App __, __; __ NW2d __ (2023) (Docket No. 357110); slip op at 3, citing *Meemic*, 506 Mich at 293. "[A] no-fault insurer's contractual antifraud provision is only valid to deny PIP coverage if it rests on a statutory defense in the no-fault act or on a common-law defense that has not been abrogated." *Howard*, __ Mich App at __; slip op at 4.[6] Because "[t]he no-fault act . . . does not provide a fraud defense to PIP coverage, [an insurer's] antifraud defense is not statutory." *Meemic*, 506 Mich at 303-304. And "the mere breach of a contract would not entitle the injured party to avoid the contract at common law." *Id*. at 308. Accordingly, an insurer must establish common-law fraud to warrant rescission of mandatory PIP coverage due to preprocurement misrepresentations. See *id*. at 304-305 & n 12.

Fraud in the inducement occurs " 'when a misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved.' " *Id*. at 306 n 13; 954 NW2d 115 (2020), quoting Black's Law Dictionary (10th ed.). Actionable fraud requires a showing that: "(1) the alleged fraudulent party made a material representation; (2) the representation was false; (3) the person making the representation knew it was false or acted recklessly in making the statement; (4) the person intended that the opposing party should act upon the representation; (5) the opposing party acted in reliance; and so (6) suffered injury." *Howard*, __ Mich App at __; slip op at 4. A misrepresentation is material if the insurer would not have issued the policy, in the manner or at the rate at which it was issued, if the insurer had known of the misrepresentation or nondisclosed fact. See *Oade v Jackson Nat'l Life Ins Co of Mich*, 465

---

[5] "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

[6] Although Progressive provided a copy of its purported policy in its appendix on appeal, we may not include it in our review because it was not part of the lower court record. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

-4-

Mich 244, 253-254; 632 NW2d 126 (2001). An insurer's statement that it would not have issued the policy had it known of the undisclosed information is enough to establish that the misrepresentation was material. See *Lash v Allstate Ins Co*, 210 Mich App 98, 103-104; 532 NW2d 869 (1995).

We find that there is a genuine issue of material fact whether there was fraud in the inducement. Progressive's motion for summary disposition was premised on its argument that Willis misrepresented where the vehicle was garaged when he completed the application for insurance. But Progressive did not provide a copy of the insurance application to the trial court. Without the application, there is no evidence of Willis's alleged "misrepresentations" or how "garaged" is explained on the application. Further, the evidence and testimony reflect that McCauley lived at the Redford address for over six years, all her mail was delivered to the Redford address, her driver's license listed the Redford address, and her wage and financial documents listed the Redford address. McCauley admitted that she periodically spent the night at her boyfriend's Detroit home since 2020, but all her personal belongings remained at the Redford address in her bedroom. While she admitted that she spent the night at her boyfriend's Detroit home as often as three or four times in a week, she testified that she could not put a firm number on how often she stayed overnight at his home because it varied. And Willis confirmed that it varied. Indeed, McCauley's testimony is somewhat inconsistent. But sorting out the truth is a jury function. A trial court may not assess the truth or weigh the evidence in reviewing a motion under MCR 2.116(C)(10). *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Moreover, Willis's testimony demonstrates his confusion on the garaging issue: "Well, considering like I said, the person and the vehicle can move about as they please, what's the time limit on where the vehicle is garaged[?]" Willis explained that he included McCauley's vehicle on the policy and used the Redford address because "she was staying here at the time and . . . is still staying here." Viewing the evidence and testimony in the light most favorable to McCauley as the nonmoving party, a reasonable trier of fact could conclude that Willis did not commit actionable fraud when he completed the application for insurance.

Regardless of the information that Willis provided on the insurance application, there is no evidence that McCauley made any false representations to Progressive during the application process. Willis testified that he completed the application on his phone and that McCauley was not part of the application process. McCauley also testified that she was not part of the application process. Progressive did not present any evidence that McCauley participated in the application process. Progressive simply asserted in its motion for summary disposition that McCauley was not an innocent third party in the preprocurement fraud because she is a named insured on the subject policy. But Progressive did not support its statement with any case law or legal analysis. And Progressive has not provided any authority or elaborated its argument on appeal. This Court rejected a similar argument in *Howard*:

> We are not aware of any case addressing whether a named insured may be considered an innocent third party under *Bazzi* [*v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018)]. However, LM is unable to articulate—and we are unable to discern—why a coinsured should be precluded from being considered an innocent party to another coinsured's fraud. Indeed, in the context of fire-insurance policies, the concept of an "innocent coinsured" is well settled. See e.g., *Williams v Auto Club Group Ins Co*, 224 Mich App 313, 315-319; 569 NW2d 403 (1997)

-5-

(holding that the intentional acts and fraud exclusion in a fire-insurance policy was precluded by statute from applying to an "innocent coinsured"). [*Howard*, __ Mich App at __ n 8; slip op at 4-5 n 8.]

Absent evidence that McCauley participated in the application process or knew that her brother made intentional misrepresentations in answering the questions on the application, a reasonable trier of fact could determine that she is an innocent third party. We find that there is a question of fact whether McCauley participated in the alleged preprocurement fraud or whether she is an innocent third party to Willis's alleged misrepresentations. See *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 512-513; 967 NW2d 841 (2021) ("[A] material question of fact remains regarding whether [the plaintiff] participated in the fraudulent procurement of the insurance policy. If a trier of fact answers that question in the affirmative, then [he] cannot be considered an innocent party.").

Even if Progressive ultimately establishes that there was a material misrepresentation in the procurement of the policy, Progressive does not have an absolute right to rescind the policy. Generally, "an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. at 409. "In effect, the insurance policy is considered never to have existed." *Id*. at 408. While McCauley's claim that she is an innocent third party does not preclude Progressive from seeking rescission of its policy for fraud, *Id*. at 407-410, Progressive does not have an absolute right to rescind the policy if it is established that she is an innocent third party. *Howard*, __ Mich App at __; slip op at 4.[7] Rescission is an equitable remedy that is left to the trial court's discretion. *Howard*, __ Mich App at __; slip op at 4-5.[8] In determining whether rescission of an insurance policy is justified, a trial court must "balance the equities." *Id*. at __; slip op at 5.[9] If the result would be inequitable or unjust, then rescission should

---

[7] Progressive also argues that McCauley violated the policy conditions when she failed to notify Progressive of the "dual garaging" after the policy was issued. But because Progressive failed to provide a copy of the policy to the trial court, there is no evidence of the policy language that was allegedly violated. Nevertheless, even if there was evidence of postprocurement fraud, it is undisputed that an insurer may not rescind PIP coverage based on *postprocurement* misrepresentations. See *Williams v Farm Bureau Mut Ins Co*, 335 Mich App 574, 586-587; 967 NW2d 869 (2021).

[8] A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or if the trial court makes an error of law. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

[9] In a concurring opinion, Justice MARKMAN articulated five nonexhaustive factors courts should consider in determining whether rescission would be equitable in "innocent-third party cases." See *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018) (MARKMAN, J., concurring). This Court adopted the factors in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411; 952 NW2d 586 (2020). The five factors address: "(1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent

not be granted. *Bazzi*, 502 Mich at 410. The insurer has the burden of establishing that rescission of its policy is warranted. *Howard*, __ Mich App at __; slip op at 5. Because we find that there is a genuine issue of material fact whether there was preprocurement fraud and, if so, whether McCauley was an innocent third party, we conclude that the trial court erred in granting Progressive's motion for summary disposition and abused its discretion in granting rescission of the policy *ab initio*.

      Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick

---

third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party." *Pioneer*, 331 Mich App at 411. The trial court failed to weigh any of these factors in this case when it authorized Progressive's rescission of its policy *ab initio*.